## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLUE-GRACE LOGISTICS LLC,
a Florida limited liability company,

      Plaintiff,

v.                           Case No. 8:21-cv-02523-KKM-CPT

DAVID FAHEY, an individual,
MARK FOX, an individual,
TYLER WILKIEL, an individual,
JASON COLLE, an individual, and
TRAFFIC TECH, INC., a foreign corporation,

      Defendants.

_____/

### AMENDED COMPLAINT

Plaintiff, Blue-Grace Logistics LLC ("Blue-Grace"), sues defendants, David Fahey ("Fahey"), Mark Fox ("Fox"), Tyler Wilkiel ("Wilkiel"), and Jason Colle ("Colle," and collectively with Fahey, Fox, and Wilkiel, the "Individual Defendants"), and Traffic Tech, Inc. ("Traffic Tech"), and alleges as follows:

### JURISDICTION, PARTIES, AND VENUE

1.    This is an action for injunctive relief and damages and the amount in controversy exceeds $75,000.00. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

2.    This Court has personal jurisdiction over the Individual Defendants because, among other things:

ACTIVE:14257805.1

a.     They each executed an Employment Agreement, as defined below, that contains the following provision:

> **Governing Law; Jurisdiction and Venue; Attorneys' Fees.** This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Hillsborough. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive any defense of inconvenient forum to the maintenance of any such action or proceeding in such venue. . . .

b.     During the term of his employment with Blue-Grace, Fahey attended multi-day meetings with Blue-Grace in Florida, during which Fahey attended work–related and social events in Hillsborough County hosted by Blue-Grace;

c.     At the beginning of the term of his employment, Fahey attended training in Florida for his employment with Blue-Grace;

d.     They each received proprietary and confidential business information from their Florida employer;

e.     Their Florida employer set and governed the terms of their employment;

f.     They received technical assistance from their Florida employer;

g.     They engaged in multiple written and telephone communications with their Florida employer, some of which included customer information;

h.     They received payment for their work from their Florida employer;

ACTIVE:14257805.1

       i.       They were insured through their Florida employer;

       j.       Their restrictive covenants include the state of Florida; and

       k.       At the time they executed their Employment Agreements, they were aware that Blue-Grace was headquartered in Florida.

3.       This Court has personal jurisdiction over defendant, Traffic Tech, because it operates, conducts, engages in or carries on a business or business venture in Florida, has agents and other representatives in Florida and as explained below, committed tortious acts in Florida.

4.       Plaintiff, Blue-Grace, is a Florida limited liability company with its principal address in Hillsborough County, Florida. Blue-Grace's members, Robert Harris and Warburg Pincus LLC, reside in Florida and New York, respectively.

5.       Fahey is an individual residing in Illinois.

6.       Fox is an individual residing in Illinois.

7.       Wilkiel is an individual residing in Illinois.

8.       Colle is an individual residing in Illinois.

9.       Traffic Tech is a foreign corporation with its principal address in Quebec, Canada, its headquarters in Chicago, Illinois, and has a registered agent in Florida.

10.      Venue is proper in Hillsborough County, Florida pursuant to each of the Employment Agreements that the Individual Defendants executed and as identified in paragraph 2(a) above, and because the causes of action set forth below accrued in Hillsborough County, Florida.

ACTIVE:14257805.1

## OPERATIVE FACTS

11.     Blue-Grace is a transportation management and solutions company based in Hillsborough County, Florida. Through the use of a web-based transportation management system, and other proprietary products, Blue-Grace assists transportation-reliant businesses streamline and consolidate their transportation needs. Its proprietary products, for which Blue-Grace invested a substantial amount of money and research and development, among other things, provide Blue-Grace a competitive advantage over its competitors.

12.     Blue-Grace also maintains business relationships with national and international freight carriers who assist Blue-Grace's customers with their transportation needs. Blue-Grace has invested a significant amount of time and goodwill in developing these business relationships.

13.     Blue-Grace provides its services throughout the United States and internationally.

14.     On or about August 28, 2017, defendant Fahey entered into an employment agreement with Blue-Grace (the "Fahey Employment Agreement"). A true and genuine copy of the Fahey Employment Agreement is attached as **Exhibit A**.

15.     Fahey was one of Blue-Grace's carrier sales representatives and was responsible for, among other things, carrier procurement and providing operational coverage for customer commitments across all Blue-Grace sales channels throughout the United States.

16.     On or about April 16, 2018, defendant Fox entered into an employment

Page **4** of **34**

agreement with Blue-Grace (the "Fox Employment Agreement"). A true and genuine copy of the Fox Employment Agreement is attached as **Exhibit B**.

17.    Fox was one of Blue-Grace's carrier sales representatives and was responsible for, among other things, carrier procurement and providing operational coverage for customer commitments across all Blue-Grace sales channels throughout the United States.

18.    On or about January 29, 2018, defendant Wilkiel entered into an employment agreement with Blue-Grace (the "Wilkiel Employment Agreement"). A true and genuine copy of the Wilkiel Employment Agreement is attached as **Exhibit C**.

19.    Wilkiel was one of Blue-Grace's carrier sales representatives and was responsible for, among other things, carrier procurement and providing operational coverage for customer commitments across all Blue-Grace sales channels throughout the United States.

20.    On or about August 8, 2016, defendant Colle entered into an employment agreement with Blue-Grace (the "Colle Employment Agreement"). A true and genuine copy of the Colle Employment Agreement is attached as **Exhibit D**.

21.    Colle was one of Blue-Grace's carrier sales representatives and was responsible for, among other things, carrier procurement and providing operational coverage for customer commitments across all Blue-Grace sales channels throughout the United States.

ACTIVE:14257805.1

22.     The Fahey Employment Agreement, Fox Employment Agreement, Wilkiel Employment Agreement, and Colle Employment Agreement will be collectively referred to as the "Employment Agreements."

23.     As a condition of their employment, the Individual Defendants agreed to restrictive covenants within the Employment Agreements, including a covenant not to compete with Blue-Grace following their employment. For example, pursuant to paragraph 6 of each of the Employment Agreements, the Individual Defendants specifically agreed as follows:

> **Non-Competition**.  During the Employee's employment with the Employer and for a period of two (2) years following the termination of the Employee's employment with the Employer at any time and for any reason, <u>the Employee shall not, on the Employee's own behalf or on behalf of others, directly or indirectly, (whether as an employer, consultant, investor, partner, sole proprietor or otherwise) be employed by, perform any services for, or hold any ownership interest in any business engaged in the business of freight forwarding services or third-party freight and/or specialized freight logistics, transportation, consulting and/or shipping,</u> including but not limited to or any business that offers and sells (whether directly or indirectly through intermediaries) or assists in or arranges the offer and sale (whether directly to end users or indirectly through intermediaries) of full truckload, less-than-truckload, air freight, express and ground small package services and/or cargo services, or provides warehouse management or carrier supply chain consulting, in any manner with any business within the continental United States.

Ex. A, ¶6; Ex. B, ¶6; Ex. C, ¶6; Ex. D, ¶6 (emphasis added).

24.     The Individual Defendants also acknowledged and agreed that "the services to be rendered by him…to the Employer are national across the continental

United States in scope…." Ex. A, ¶9; Ex. B, ¶9; Ex. C, ¶9; Ex. D, ¶9.

25.     In consideration of their access to Blue-Grace's trade secrets, confidential and proprietary information and other employment-related benefits and opportunities provided to them, including the business intelligence they obtained while at Blue-Grace, the Individual Defendants agreed that they would not disclose any trade secrets or confidential or proprietary information during the term of their employment or any time after their termination:

> **Confidential Information**.  The Employee understands and acknowledges that during the course of employment by the Employer, he/she will have access to and learn about confidential, trade secret and proprietary documents, materials and other information, in tangible and intangible form, of and relating to the Employer Group, its business and existing and prospective customers, suppliers, investors and other associated third parties ("**Confidential Information**").  The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee might cause the Employer to suffer immediate and irreparable harm.
>
> . . .
>
> (b)     Disclosure and Use Restrictions.  During the term of Employee's employment with Employer and at all times after termination of Employee's employment with Employer for any reason…Employee agrees: (a) not to publish, copy, disclose, allow to be published, copied or disclosed, or use for his or her own benefit or for the benefit of any other person, firm, corporation, business or entity, the Confidential Information without the prior written consent of Employer; (b) to  maintain strictly the confidentiality of the Confidential Information at all times;

ACTIVE:14257805.1

and (c) to take all necessary precautions to protect against unauthorized disclosure or use of the Confidential Information except that Employee may disclose such information to persons, firms or corporations who need to know such information during the course and within the scope of Employee's employment.

Ex. A, ¶¶2(a) and (b); Ex. B, ¶¶2(a) and (b); Ex. C, ¶¶(2)(a) and (b); Ex. D, ¶¶(2)(a) and (b).

26.     The Individual Defendants further agreed that the Confidential Information is the property of Blue-Grace and must be returned to Blue-Grace immediately upon their termination of employment with Blue-Grace.

Employee acknowledges that the Confidential Information is the property of the Employer and agrees that all Confidential Information will be returned to Employer immediately upon termination of Employee's employment for whatever reason. Employee agrees to execute an affidavit as to the complete return of all Confidential Information if Employer so requests.

Ex. A, ¶2(b); Ex. B, ¶2(b); Ex. C, ¶2(b); Ex. D, ¶2(b).

27.     The Individual Defendants further agreed as follows:

**Employee Acknowledgments**. The Employee acknowledges and agrees that (i) the services to be rendered by him/her to the Employer are national across the continental United States in scope, and are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and the terms and conditions of this Agreement are reasonable under these circumstances; (ii) that he/she will not be subject to undue hardship by reason of his/her full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; (iii) the restrictive covenants contained herein are independent of any other provision in this Agreement or any other agreement by, among, or

ACTIVE:14257805.1

affecting the Employer and the Employee and are independent of the existence of any claim or cause of action by the Employee against the Employer, (iv) he/she has fulfilled the terms of all pre-existing employment, noncompetition and confidentiality agreements, and that his/her execution, delivery and performance of this Agreement shall not interfere or conflict with any such pre-existing agreement(s); . . .

Ex. A, ¶9; Ex. B, ¶9; Ex. C, ¶9; Ex. D, ¶9.

28.     The Individual Defendants further agreed as follows:

**No Solicitation of Employees**.  The Employee agrees that, both during the Employee's employment with the Employer and for a period of two (2) years following the termination of the Employee's employment with the Employer at any time and for any reason, the Employee will not, directly or indirectly, on the Employee's own behalf or on behalf of any other person or entity, hire or solicit to hire or cause to be hired for employment … any person who is actively employed … by the Employer.

Ex. A, ¶4; Ex. B, ¶4; Ex. C, ¶4; Ex. D, ¶4.

29.     The Individual Defendants also acknowledged that they carefully read the provisions described and that such provisions are fair and reasonable:

**Reasonableness of Restrictions**.  Employee has carefully read and considered all of the provisions of this Agreement and, having done so, agrees that the restrictions put on him/ her by virtue of this Agreement (including, but not limited to, the time period of restriction  and  the geographical  areas  of restriction ) are fair and reasonable and are reasonably required for the  protection  of  the interests  of  Employer, and will not prevent them from becoming gainfully employed in the future.

Ex. A, ¶10; Ex. B, ¶10; Ex. C, ¶10; Ex. D, ¶10.

ACTIVE:14257805.1

30.    The Individual Defendants further agreed that that there is no other agreement that is applicable to their employment:

> **Entire Agreement**.  Unless specifically provided herein, this Agreement contains all the understanding and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to the subject matter.

Ex. A, ¶15; Ex. B, ¶15; Ex. C, ¶15; Ex. D, ¶15.

31.    Finally, the Individual Defendants consented to the injunctive relief requested:

> **Remedies**. In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

Ex. A, ¶12; Ex. B, ¶12; Ex. C, ¶12; Ex. D, ¶12.

32.    By virtue of their employment, the Individual Defendants gained access to Blue-Grace's intelligence and Confidential Information, including Blue-Grace's (1) business processes, practices, and methods; (2) trade secrets and related good will; (3) computer programs, software, applications, and designs; (4) marketing and advertising information; (5) pricing information; (6) supplier, vendor, and distributor lists; (7)

ACTIVE:14257805.1

customer information and lists; and (8) prospective customer, distributor, supplier and investor information.

33.     Relying on the restrictive covenants that the Individual Defendants agreed to, Blue-Grace provided them its valuable intelligence and Confidential Information and training as an ongoing investment designed to give Blue-Grace an advantage over its competitors.

34.     Blue-Grace has taken reasonable steps to protect its legitimate business interests and Confidential Information provided to the Individual Defendants by requiring that the Individual Defendants and other employees agree to reasonable confidentiality and non-competition obligations identified above, and protecting such information by not exposing or disseminating it outside of Blue-Grace. See Ex. A, ¶7; Ex. B, ¶7; Ex. C, ¶7; Ex. D, ¶7.

35.     As expressly agreed to by the Individual Defendants in their respective Employment Agreements, the restrictive covenants in the Employment Agreements are reasonably necessary to protect Blue-Grace's legitimate business interests, and the geographic scope of the restrictive covenants is reasonable because, among other things, Blue-Grace provides its services to clients throughout the United States and internationally.  Ex. A, ¶¶9-10; Ex. B, ¶¶9-10; Ex. C, ¶¶9-10; Ex. D, ¶¶9-10.

36.     By way of example only, the restrictive covenants are reasonably necessary to protect Blue-Grace's business intelligence, goodwill, its relationships with customers, and its confidential and proprietary business practices. The restrictive covenants were implemented to, among other things, protect Blue-Grace's

investments and Confidential Information and avoid the unfair competition of former employees against Blue-Grace (for instance the actions of the Individual Defendants).

37.    Blue-Grace's confidential, proprietary and trade secret information has substantial value in the industry, and disclosure of this information to outsiders would cause irreparable harm to Blue-Grace's business as well as extensive money damages.

38.    On or about November 27, 2020, Fahey resigned his employment with Blue-Grace.

39.    At the time of his resignation, Fahey was Blue-Grace's top carrier salesperson in Chicago, Illinois, which is a key market for Blue-Grace's business operations.

40.    Fahey was the manager of approximately 40 of Blue-Grace's carrier sales representatives in Blue-Grace's West, Midwest, and South regions, which covered a majority of the continental United States.

41.    Fahey began discussing an employment opportunity with Traffic Tech no later than November 5, 2020 and scheduled an interview with Traffic Tech around that time.

42.    On November 6, 2020, Fahey emailed to himself, using his personal email addresses, the following document, which is a 20-page document containing confidential information of Blue-Grace:

ACTIVE:14257805.1



43.     The analysis document contains Blue-Grace's confidential information regarding year-to-date gross profits, market trends, transactional truck load metric trending, customer trends, shipments and gross profits per customer, customer account management information, Q1 2021 financial forecasts, customer quote performance, and Blue-Grace sales information, among other things.

44.     On November 9, 2020, Fahey emailed to himself, from his Blue-Grace email to his personal email, a document containing certain confidential information of Blue-Grace relating to carrier sales and procurement strategy. Blue-Grace's confidential information includes an analysis regarding Blue-Grace's carrier sales strategy, quarterly review processes, and training for developing carrier sales and relationships.

45.     These documents are Blue-Grace's confidential and proprietary business information, and its Work Product, as defined in the Employment Agreements, which

ACTIVE:14257805.1

is the sole and exclusive property of Blue-Grace. See Ex. A, ¶3; Ex. B, ¶3; Ex. C, ¶3; Ex. D, ¶3.

46.     Fahey took Blue-Grace's confidential and proprietary business information, as identified above, without Blue-Grace's written consent or knowledge.

47.     After resigning from Blue-Grace and within the noncompetition period described above, Fahey began employment with Traffic Tech, a Blue-Grace competitor.

48.     Fahey and Traffic Tech remain in possession of the confidential documents identified above.

49.     Fox worked in Blue-Grace's Chicago, Illinois office. On or about January 12, 2021, Fox's employment with Blue-Grace was terminated.

50.     Wilkiel worked in Blue-Grace's Chicago, Illinois office. On or about March 15, 2021, Wilkiel's employment with Blue-Grace was terminated.

51.     Colle worked in Blue-Grace's Chicago, Illinois office. On or about December 18, 2020, Colle's employment with Blue-Grace was terminated.

52.     Traffic Tech is a competitor of Blue-Grace because it also engages in the business of providing freight forwarding services, third-party freight and/or specialized freight logistics, transportation, consulting and/or shipping.

53.     Fox, Wilkiel and Colle were top performing carrier sales representatives at Blue-Grace, and each were under Fahey's supervision and management. Upon information and belief, Fahey solicited and recruited Fox, Wilkiel and Colle to terminate their employment with Blue-Grace and join Traffic Tech, which they did.

ACTIVE:14257805.1

54.     In their current positions with Traffic Tech, the Individual Defendants are in a position to use the business intelligence they gained while at Blue-Grace as well as Blue-Grace's Confidential Information to compete in a way that is adverse to Blue-Grace's business interests and for which the Individual Defendants specifically agreed they would not do pursuant to the restrictive covenants.

55.     The information that the Individual Defendants were exposed to while at Blue-Grace enables Traffic Tech to compete with Blue-Grace in a way that other competitors without the benefit of Blue-Grace's Confidential Information cannot.

56.     Prior to employing the Individual Defendants, and while they were still employed by Blue-Grace, Traffic Tech had knowledge of their Employment Agreements with Blue-Grace and the fact that they were each subject to a non-competition provision.

57.     Traffic Tech targeted Fahey who was Blue-Grace's top carrier salesperson in Chicago.

58.     Traffic Tech and Fahey targeted Fox, Wilkiel, and Colle who worked in the same office in Chicago as Fahey for Blue-Grace.

59.     The Individual Defendants all currently work for Traffic Tech in its Chicago, Illinois office, which is less than a few miles from the office where they worked while employed by Blue-Grace.

60.     Traffic Tech assisted and encouraged the Individual Defendants to breach the restrictive covenants in their Employment Agreements with Blue-Grace in furtherance of its ongoing efforts to interfere with Blue-Grace's business operations.

ACTIVE:14257805.1

61.     The Individual Defendants have been paid and directed by Traffic Tech to violate their contractual agreements with Blue-Grace.

62.     Traffic Tech is paying Fahey's legal fees and costs associated with defending this action, and upon information and belief, is also paying Fox, Colle, and Wilkiel's legal fees and costs associated with defending this action.

63.     Traffic Tech has employed efforts to lure individuals such as the Individual Defendants to join Traffic Tech in an attempt to prevent Blue-Grace from serving its customers, and in an effort to steal Blue-Grace's business.

64.     Traffic Tech's interference with Blue-Grace's rights under the Employment Agreements and/or business relationships, and the Individual Defendants' violations of their Employment Agreements, is intentional, willful, wanton, malicious, unfair, and/or done in reckless disregard of Blue-Grace's rights, and are specifically designed to injure Blue-Grace.

65.     In addition, Blue-Grace has discovered that Traffic Tech has gained unauthorized access to Blue-Grace's confidential and proprietary software platform, known as ORCA, through Wilkiel while he was providing services for the benefit of Traffic Tech.

66.     ORCA houses Blue-Grace's proprietary information and data processing functions, which provides Blue-Grace with substantial competitive advantages in the market and are used by Blue-Grace employees on a daily basis to increase productivity and revenue for Blue-Grace.

ACTIVE:14257805.1

67.     Further, Blue-Grace was able to capture one of Traffic Tech's IP addresses accessing Blue-Grace's confidential information and accounts on one of its vendor's, Carrier411, platform without permission or authorization. Blue-Grace's paid corporate accounts with Carrier411 contain proprietary information concerning Blue-Grace's preferred carrier base, which provides Blue-Grace with competitive advantages in the market.

68.     Blue-Grace has legally protectable interests in its agreements with its employees, Confidential Information, business and professional reputation, employee retention, goodwill, client relationships, and the specialized skills and knowledge of its talent that it trained and employed (including the Individual Defendants).

69.     Blue-Grace has retained the law firm of Gunster Yoakley & Stewart, P.A. to represent it in this action and has agreed to pay the law firm attorneys' fees and costs for its representation. Pursuant to section 542.335(k), Florida Statutes, and the Employment Agreement, Blue-Grace requests that this Court award it the costs and attorneys' fees incurred in this action.

70.     All conditions precedent to the maintenance of this action and to the granting of the relief requested herein have occurred, have been performed, or have otherwise been waived.

## COUNT I
### (Breach of Contract/Injunctive Relief against Fahey)

71.     Blue-Grace realleges paragraphs 1 through 70 above.

72.     Blue-Grace and Fahey entered into the Fahey Employment Agreement,

ACTIVE:14257805.1

which is a valid contract.

73.     Fahey has breached the Fahey Employment Agreement by engaging in the conduct described above.

74.     Blue-Grace has suffered irreparable harm as a result of Fahey's breaches of the Fahey Employment Agreement and will continue to suffer such harm and injury so long as Fahey's conduct remains unrestrained.

75.     The restrictive covenants contained in the Fahey Employment Agreement protect a legitimate business interest.

76.     Pursuant to the Fahey Employment Agreement and Florida law, Blue-Grace has a substantial likelihood of success on the merits of its claim stemming from a demonstrably clear legal right to the entry of an injunction.

77.     The threatened injury to Blue-Grace includes, as discussed above, improper disclosure of Blue-Grace's business processes, practices, and methods, trade secrets and pricing information to third parties due to Fahey's prior access to this information while at Blue-Grace.

78.     The threatened harm significantly outweighs Fahey's interest in maintaining employment with Traffic Tech in direct violation of his restrictive covenants. With an injunction entered, Fahey will simply be forced to comply with an agreement he willingly entered.

79.     The entry of an injunction in this matter would not be adverse to the public interest.

ACTIVE:14257805.1

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter a temporary and permanent injunction:

(a)     enjoining or restraining Fahey from competing with Blue-Grace within the geographical area described in the Fahey Employment Agreement, to wit, anywhere within the United States, for two (2) years from the date of entry of such order;

(b)     enjoining or restraining Fahey from directly or indirectly soliciting Blue-Grace' employees to terminate his or her employment with Blue-Grace to join Traffic Tech for two (2) years from the date of entry of such order;

(c)     enjoining or restraining Fahey from directly or indirectly soliciting or accepting business from current Blue-Grace customers and clients, wherever located, for two (2) years from the date of entry of such order;

(d)     compelling Fahey to return all Blue-Grace Confidential Information, as that term is defined in the Fahey Employment Agreement, which is in his possession, custody or control; and

(e)     granting Blue-Grace such further relief as the Court deems necessary to protect Blue-Grace's rights and interest, including an award of attorneys' fees and costs incurred in the filing and litigation of this action, and any such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT II
### (Breach of Contract/Damages against Fahey)

80.    Blue-Grace realleges paragraphs 1 through 70 above.

81.    Blue-Grace and Fahey entered into the Fahey Employment Agreement, which is a valid contract.

82.    Fahey has breached the Fahey Employment Agreement by engaging in the conduct described above.

83.    As a direct and proximate result of Fahey's breaches of the Fahey Employment Agreement, Blue-Grace has suffered damages.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter judgment against defendant, David Fahey, for damages, costs, attorneys' fees, interest, and such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT III
### (Breach of Contract/Injunctive Relief against Fox)

84.    Blue-Grace realleges paragraphs 1 through 70 above.

85.    Blue-Grace and Fox entered into the Fox Employment Agreement, which is a valid contract.

86.     Fox has breached the Fox Employment Agreement by engaging in the conduct described above.

87.    Blue-Grace has suffered irreparable harm as a result of Fox's breaches of the Fox Employment Agreement and will continue to suffer such harm and injury so long as Fox's conduct remains unrestrained.

Page **20** of 34

88.     The restrictive covenants contained in the Fox Employment Agreement protect a legitimate business interest.

89.     Pursuant to the Fox Employment Agreement and Florida law, Blue-Grace has a substantial likelihood of success on the merits of its claim stemming from a demonstrably clear legal right to the entry of an injunction.

90.     The threatened injury to Blue-Grace includes, as discussed above, improper disclosure of Blue-Grace's business processes, practices, and methods, trade secrets and pricing information to third parties due to Fox's prior access to this information while at Blue-Grace. This threatened harm significantly outweighs Fox's interest in maintaining employment with Traffic Tech in direct violation of his restrictive covenants. With an injunction entered, Fox will simply be forced to comply with an agreement he willingly entered. The entry of an injunction in this matter would not be adverse to the public interest.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter a temporary and permanent injunction:

(a)     enjoining or restraining Fox from competing with Blue-Grace within the geographical area described in the Fox Employment Agreement, to wit, anywhere within the United States, for two (2) years from the date of entry of such order;

(b)     enjoining or restraining Fox from directly or indirectly soliciting Blue-Grace' employees to terminate his or her employment with

ACTIVE:14257805.1

Blue-Grace to join Traffic Tech for two (2) years from the date of entry of such order;

(c)    enjoining or restraining Fox from directly or indirectly soliciting or accepting business from current Blue-Grace customers and clients, wherever located, for two (2) years from the date of entry of such order;

(d)    compelling Fox to return all Blue-Grace Confidential Information, as that term is defined in the Fox Employment Agreement, which is in his possession, custody or control; and

(e)    granting Blue-Grace such further relief as the Court deems necessary to protect Blue-Grace's rights and interest, including an award of attorneys' fees and costs incurred in the filing and litigation of this action, and any such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT IV
### (Breach of Contract/Damages against Fox)

91.    Blue-Grace realleges paragraphs 1 through 70 above.

92.    Blue-Grace and Fox entered into the Fox Employment Agreement, which is a valid contract.

93.    Fox has breached the Fox Employment Agreement by engaging in the conduct described above.

94.     As a direct and proximate result of Fox's breaches of the Fox Employment Agreement, Blue-Grace has suffered damages.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter judgment against defendant, Mark Fox, for damages, costs, attorneys' fees, interest, and such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT V
### (Breach of Contract/Injunctive Relief against Wilkiel)

95.     Blue-Grace realleges paragraphs 1 through 70 above.

96.     Blue-Grace and Wilkiel entered into the Wilkiel Employment Agreement, which is a valid contract.

97.      Wilkiel has breached the Wilkiel Employment Agreement by engaging in the conduct described above.

98.     Blue-Grace has suffered irreparable harm as a result of Wilkiel's breaches of the Wilkiel Employment Agreement and will continue to suffer such harm and injury so long as Wilkiel's conduct remains unrestrained.

99.     The restrictive covenants contained in the Wilkiel Employment Agreement protect a legitimate business interest.

100.    Pursuant to the Wilkiel Employment Agreement and Florida law, Blue-Grace has a substantial likelihood of success on the merits of its claim stemming from a demonstrably clear legal right to the entry of an injunction.

ACTIVE:14257805.1

101.   The threatened injury to Blue-Grace includes, as discussed above, improper disclosure of Blue-Grace's business processes, practices, and methods, trade secrets and pricing information to third parties due to Wilkiel's prior access to this information while at Blue-Grace. This threatened harm significantly outweighs Wilkiel's interest in maintaining employment with Traffic Tech in direct violation of his restrictive covenants. With an injunction entered, Wilkiel will simply be forced to comply with an agreement he willingly entered. The entry of an injunction in this matter would not be adverse to the public interest.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter a temporary and permanent injunction:

(a)   enjoining or restraining Wilkiel from competing with Blue-Grace within the geographical area described in the Wilkiel Employment Agreement, to wit, anywhere within the United States, for two (2) years from the date of entry of such order;

(b)   enjoining or restraining Wilkiel from directly or indirectly soliciting Blue-Grace' employees to terminate his or her employment with Blue-Grace to join Traffic Tech for two (2) years from the date of entry of such order;

(c)   enjoining or restraining Wilkiel from directly or indirectly soliciting or accepting business from current Blue-Grace customers and clients, wherever located, for two (2) years from the date of entry of such order;

(d)    compelling Wilkiel to return all Blue-Grace Confidential Information, as that term is defined in the Wilkiel Employment Agreement, which is in his possession, custody or control; and

(e)    granting Blue-Grace such further relief as the Court deems necessary to protect Blue-Grace's rights and interest, including an award of attorneys' fees and costs incurred in the filing and litigation of this action, and any such further relief as the Court deems just and proper to protect Blue-Grace's rights.

**COUNT VI**
**(Breach of Contract/Damages against Wilkiel)**

102.    Blue-Grace realleges paragraphs 1 through 70 above.

103.    Blue-Grace and Wilkiel entered into the Wilkiel Employment Agreement, which is a valid contract.

104.    Wilkiel has breached the Wilkiel Employment Agreement by engaging in the conduct described above.

105.    As a direct and proximate result of Wilkiel's breaches of the Wilkiel Employment Agreement, Blue-Grace has suffered damages.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter judgment against defendant, Tyler Wilkiel, for damages, costs, attorneys' fees, interest, and such further relief as the Court deems just and proper to protect Blue-Grace's rights.

ACTIVE:14257805.1

## COUNT VII
### (Breach of Contract/Injunctive Relief against Colle)

106.   Blue-Grace realleges paragraphs 1 through 70 above.

107.   Blue-Grace and Colle entered into the Colle Employment Agreement, which is a valid contract.

108.   Colle has breached the Colle Employment Agreement by engaging in the conduct described above.

109.   Blue-Grace has suffered irreparable harm as a result of Colle's breaches of the Colle Employment Agreement and will continue to suffer such harm and injury so long as Colle's conduct remains unrestrained.

110.   The restrictive covenants contained in the Colle Employment Agreement protect a legitimate business interest.

111.   Pursuant to the Colle Employment Agreement and Florida law, Blue-Grace has a substantial likelihood of success on the merits of its claim stemming from a demonstrably clear legal right to the entry of an injunction.

112.   The threatened injury to Blue-Grace includes, as discussed above, improper disclosure of Blue-Grace's business processes, practices, and methods, trade secrets and pricing information to third parties due to Colle's prior access to this information while at Blue-Grace. This threatened harm significantly outweighs Colle's interest in maintaining employment with Traffic Tech in direct violation of his restrictive covenants. With an injunction entered, Colle will simply be forced to

ACTIVE:14257805.1

comply with an agreement he willingly entered. The entry of an injunction in this matter would not be adverse to the public interest.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter a temporary and permanent injunction:

(a)    enjoining or restraining Colle from competing with Blue-Grace within the geographical area described in the Colle Employment Agreement, to wit, anywhere within the United States, for two (2) years from the date of entry of such order;

(b)    enjoining or restraining Colle from directly or indirectly soliciting Blue-Grace' employees to terminate his or her employment with Blue-Grace to join Traffic Tech for two (2) years from the date of entry of such order;

(c)    enjoining or restraining Colle from directly or indirectly soliciting or accepting business from current Blue-Grace customers and clients, wherever located, for two (2) years from the date of entry of such order;

(d)    compelling Colle to return all Blue-Grace Confidential Information, as that term is defined in the Colle Employment Agreement, which is in his possession, custody or control; and

(e)    granting Blue-Grace such further relief as the Court deems necessary to protect Blue-Grace's rights and interest, including an award of attorneys' fees and costs incurred in the filing and litigation of this

ACTIVE:14257805.1

action, and any such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT VIII
**(Breach of Contract/Damages against Colle)**

113.   Blue-Grace realleges paragraphs 1 through 70 above.

114.   Blue-Grace and Colle entered into the Colle Employment Agreement, which is a valid contract.

115.   Colle has breached the Colle Employment Agreement by engaging in the conduct described above.

116.   As a direct and proximate result of Colle's breaches of the Colle Employment Agreement, Blue-Grace has suffered damages.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter judgment against defendant, Jason Colle, for damages, costs, attorneys' fees, interest, and such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT IX
**(Tortious Interference with Contract against Traffic Tech)**

117.   Blue-Grace realleges paragraphs 1 through 70 above.

118.   The Employment Agreements are valid and enforceable contracts between the Individual Defendants and Blue-Grace.

119.   Prior to the Individual Defendants' resignation or termination from Blue-Grace, Traffic Tech had actual knowledge of their respective Employment

ACTIVE:14257805.1

Agreements, including the restrictive covenants in each of the Employment Agreements.

120.   Traffic Tech intentionally and tortiously interfered with the Individual Defendants' Employment Agreements by encouraging the Individual Defendants to breach the restrictive covenants in their respective Employment Agreements, which each did in fact breach, and hiring the Individual Defendants with the further intent to poach Blue-Graces' clients, employees subject to non-compete agreements, confidential information, and future business opportunities.

121.   Traffic Tech intentionally and tortiously interfered in order to harm its competitor, Blue-Grace.

122.   As a direct and proximate result of Traffic Tech's actions, Blue-Grace has been, and continues to be, damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter judgment against defendant, Traffic Tech, for damages, costs, interest, and such further relief as the Court deems just and proper to protect Blue-Grace's rights.

## COUNT X
### (Injunctive Relief against Traffic Tech)

123.   Blue-Grace realleges paragraphs 1 through 70 above.

124.   Pursuant to Paragraph 6 of the Employment Agreements, the Individual Defendants agreed they would not, directly or indirectly, work for a competing business during the duration of the two-year noncompetition covenant.

125.    Traffic Tech is acting in concert and participation with the Individual Defendants in their ongoing violations of the restrictive covenant obligations described above because Traffic Tech is continuing to employ each of them.

126.    In addition, the Individual Defendants each contractually acknowledged that they had access to and learned Blue-Grace's confidential, secret, and proprietary documents, materials, and other information.

127.    The Individual Defendants further contractually acknowledged that Blue-Grace's Confidential Information (as defined in the Employment Agreement) includes, but is not limited to, Blue-Grace's confidential: (1) business processes, practices, and methods; (2) trade secrets and related good will; (3) computer programs, software, applications, and designs; (4) marketing and advertising information; (5) pricing information; (6) supplier, vendor, and distributor lists; (7) customer information and lists; and (8) prospective customer, distributor, supplier and investor information.

128.    The Individual Defendants contractually acknowledged that the above Confidential Information and Blue-Grace's ability to reserve it for the exclusive knowledge and use of Blue-Grace is of great competitive importance and commercial value to Blue-Grace.

129.    In violation of his restrictive covenant obligations, Fahey absconded with Blue-Grace's confidential and proprietary business information, as described above, by emailing such information to his personal email address without Blue-Grace's consent or knowledge. In addition, in violation of his restrictive covenant obligations,

ACTIVE:14257805.1

Wilkiel secretly accessed Blue-Grace's confidential and proprietary software platform, known as ORCA, while providing services to Traffic Tech.

130.   The noncompetition and other restrictive covenants included in the Employment Agreements are fair and reasonable restrictions that allow Blue-Grace to protect its legitimate business interests.

131.   Blue-Grace has legally protectable interests as described above, has a clear legal right to the same, and is entitled to prevent Traffic Tech from poaching its employees who are subject to non-compete agreements and from obtaining and/or using Blue-Grace's Confidential Information for its own benefit.

132.   Blue-Grace is likely to succeed on the merits of its claims against the Individual Defendants and Traffic Tech. The Individual Defendants do not and cannot dispute their current employment with Traffic Tech, and cannot dispute that their ongoing employment with Traffic Tech constitutes a violation of the plain language of the Employment Agreements. Further, Traffic Tech has committed the tortious acts against Blue-Grace as described above.

133.   Blue-Grace will suffer irreparable harm if an injunction is not granted against Traffic Tech, enjoining it from continuing to commit tortious acts against Blue-Grace and from intentionally interfering with Blue-Grace's contractual relationships with its employees subject to non-compete agreements.  The irreparable harm includes, but is not limited to, Blue-Graces' loss of its: (1) confidential and proprietary business processes, practices, and methods; (2) trade secrets and related good will; (3) marketing and advertising information; (4) pricing information; (5) supplier, vendor, and

ACTIVE:14257805.1

distributor relationships; (6) customer information and relationships; and (7) and the specialized skills and knowledge of its talent that it trained and employed (including the Individual Defendants).

134.   Blue-Grace will endure significant hardship without injunctive relief to prevent Traffic Tech from unlawfully harming Blue-Grace.

135.   Here, the threatened injury to Blue-Grace includes, as discussed above, improper disclosure of Blue-Grace's business processes, practices, and methods, trade secrets and pricing information to third parties due to the Individual Defendants' prior access to this information while at Blue-Grace. This threatened harm significantly outweighs Traffic Tech's interest in maintaining the Individual Defendants' employment with Traffic Tech in direct violation of their restrictive covenants. With an injunction entered, the Individual Defendants' will simply be forced to comply with the agreements they willingly entered.

136.   The public interest will be served by granting injunctive relief in favor of Blue-Grace including, but not limited to, the protection of confidential information and legitimate business interests and the prevention of unfair competition.

137.   Blue-Grace is entitled to a permanent injunction enjoining Traffic Tech from tortiously interfering with Blue-Grace's business relationships, including with its clients and employees subject to non-compete agreements, and from misappropriating or attempting to misappropriate Blue-Grace's Confidential Information.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter a temporary and permanent injunction enjoining Traffic Tech from tortiously

ACTIVE:14257805.1

interfering with Blue-Grace's contracts with its employees, including the Individual Defendants, and from misappropriating or attempting to misappropriate Blue-Grace's Confidential Information, and for such further relief as this Court deems just and proper.

## COUNT XI
### (Aiding and Abetting Breach of Restrictive Covenants against Traffic Tech)

138.   Blue-Grace realleges paragraphs 1 through 70 and 124 through 137.

139.   As explained above, there are underlying violations of the Employment Agreements by the Individual Defendants, the primary wrongdoers.

140.   Traffic Tech had knowledge of the underlying violations by the Individual Defendants.

141.   By its actions as explained above, Traffic Tech provided substantial assistance to the Individual Defendants in committing the wrongdoing and violations of their Employment Agreements.

142.   The aiding and abetting by Traffic Tech caused damage to Blue-Grace.

WHEREFORE, Plaintiff, Blue-Grace Logistics LLC, requests that this Court enter judgment against defendant, Traffic Tech, enjoining Traffic Tech from aiding and abetting the Individual Defendants 's breaches of their Employment Agreements, and for such further relief as this Court deems just and proper.


[SIGNATURE ON NEXT PAGE]

ACTIVE:14257805.1

**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson St., Suite 1500
Tampa, Florida 33602
(813) 228-9080 (telephone)
(813) 228-6739 (facsimile)

*/s/ John A. Schifino*
John A. Schifino, Esq.
Florida Bar No. 0072321
Daniel P. Dietrich, Esq.
Florida Bar No. 0934461
Justin P. Bennett, Esq.
Florida Bar No. 112833
jschifino@gunster.com (primary)
ddietrich@gunster.com (primary)
jbennett@gunster.com (primary)
csanders@gunster.com (secondary)
kkovach@gunster.com (secondary)
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I CERTIFY that on December 3, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the parties of record.

*/s/ John A. Schifino*
John A. Schifino, Esq.

ACTIVE:14257805.1