UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLUE-GRACE LOGISTICS LLC,

     Plaintiff,

v.                            Case No: 8:21-cv-2523-KKM-CPT

DAVID FAHEY, et al.,

     Defendants.

_____

## ORDER

Blue-Grace Logistics, LLC, moves for a preliminary injunction to prevent four former employees from continuing their employment with a competitor and to stop that competitor from interfering with its contractual relationships. Because Blue-Grace has not established that it will suffer irreparable harm without an injunction, the Court denies the motion.

## I.    BACKGROUND

Blue-Grace is a transportation management and solutions company based in Hillsborough County, Florida. It provides logistics assistance to customers throughout the United States. (Doc. 32 at 3.) One way it does so is by contracting with independent

carriers to haul freight for Blue-Grace's customers. (*Id.*) Maintaining relationships with carriers is essential to Blue-Grace's business.

Between August 2016 and April 2018, Blue-Grace hired David Fahey, Mark Fox, Tyler Wilkiel, and Jason Colle. (Doc. 31 ¶¶ 14–20.) All four worked in Blue-Grace's Chicago office. (*Id.* ¶¶ 49–51, 58.) They all began as carrier sales representatives responsible for "carrier procurement and providing operational coverage for customer commitments across all Blue-Grace sales channels throughout the United States." (*Id.* ¶¶ 15, 17, 19, 21.)

Blue-Grace required each of them to sign an extensive employment agreement. (Doc. 32-1; Doc. 32-2; Doc. 32-3; Doc. 32-4.) The agreement included a non-competition clause that prohibited former employees from working for a competing logistics company anywhere within the continental United States for two years. (Doc. 32 at 4–5.) It also included a confidentiality and nondisclosure clause. By signing the agreement, these clauses required Fahey, Fox, Wilkiel, and Colle to acknowledge that they would learn confidential information during their employment with Blue-Grace and that they must not disclose it. (*Id.* at 5–6.) They further agreed not to solicit Blue-Grace's employees for alternative employment within two years. (*Id.* at 7–8.) Finally, they agreed that these restrictions were reasonable to protect Blue-Grace's interests.[1] (*Id.* at 8.)

---

[1] The agreement also required the individual Defendants to acknowledge that, if they breached the agreement, Blue-Grace would be "entitled to seek" injunctive relief. (Doc. 31 ¶ 31.) Blue-Grace suggests

None still work at Blue-Grace. Fahey resigned on November 27, 2020. (*Id.* at 10.) At the time, he was Blue-Grace's top carrier salesperson in Chicago and managed approximately 40 carrier sales representatives, including Fox, Wilkiel, and Colle. (Doc. 31 ¶¶ 39–40, 53.) Colle resigned on December 18, 2020. (Doc. 32 at 12; Doc. 42 at 7.) Fox followed suit on January 12, 2021. (Doc. 32 at 12; Doc. 42 at 7–8.) And Wilkiel resigned on March 15, 2021. (Doc. 32 at 12; Doc. 42 at 1 n.2.)

All four are now employed at Traffic Tech, Inc., a competitor of Blue-Grace. (Doc. 32-5 at 4.) Traffic Tech hired each of them within the two-year period specified in the non-compete agreement. (Doc. 42 at 12.) They all work in Traffic Tech's Chicago office, a few miles away from Blue-Grace's office. (Doc. 32 at 12.) Fox, Wilkiel, and Colle work with carriers, just as they did at Blue-Grace. (Doc. 42 at 12.) Fahey is a vice president of operations at Traffic Tech and, according to Defendants, does not work directly with carriers or carrier sales representatives. (*Id.* at 13.)

Blue-Grace claims that the individual Defendants acquired Blue-Grace's confidential and proprietary information during their time at Blue-Grace. (Doc. 32 at 5–6.) As carrier sales representatives, they would have learned Blue-Grace's pricing, its processes and methods, and its software systems and designs. (*Id.*) Blue-Grace asserts that

---

that that the individual Defendants thus consented to an injunction. The Court disagrees. First, the agreement says only that Blue-Grace would be "entitled to *seek*" injunctive relief, (*id.* (emphasis added)), not that it would be entitled to it. Second, whether Blue-Grace is entitled to an injunction—an equitable remedy—is a legal determination reserved for the Court.

3

Defendants' knowledge of Blue-Grace's practices and pricing gives Traffic Tech an advantage. (Doc. 31 ¶ 55.)

In addition to the information that they carry in their heads, Fahey and Wilkiel took other data with them. Fahey emailed himself Blue-Grace's internal coaching instructions for carrier sales employees, its Sales Truckload Analysis, and its carrier sales strategy. (Doc. 32 at 10–11; Doc. 43-15 at 7–8.) He did so while negotiating terms of employment with Traffic Tech but while still working at Blue-Grace. (Doc. 32 at 10–11.) Meanwhile, Wilkiel, after his resignation from Blue-Grace and after he began work at Traffic Tech, accessed Blue-Grace's platform known as ORCA. (*Id.* at 12; Doc. 43-18 at 5.) According to Blue-Grace, ORCA houses its confidential and proprietary information and a data processing function that Blue-Grace employees use on a daily basis. (*Id.* at 12–13.) Meanwhile, Defendants attest that ORCA holds only publicly available information that carrier representatives input as a matter of convenience. (Doc. 43-18 at 3.) For his part, Wilkiel admitted that he accessed ORCA while at Traffic Tech, but claims it was only to "locate a few phone numbers." (Doc. 43-18 at 5.)

Three days after Fahey resigned to work at Traffic Tech, on December 1, 2020, Blue-Grace sued Fahey in state court and moved for a temporary restraining order. (Doc. 1-4 at 3.) On January 8, 2021, Fahey removed to federal court.[2] Blue-Grace filed for a

---

[2] The Court takes judicial notice of the docket from the prior federal suit as its accuracy is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b)(2).

temporary restraining order that same day. On January 12, 2021, the federal court denied the motion without prejudice on procedural grounds. Blue-Grace did not refile the motion. Instead, Blue-Grace moved to remand to state court on February 25, 2021. On April 20, 2021, the court granted the motion. *See Blue-Grace Grp., LLC v. Fahey*, No. 21-cv-0058, 2021 WL 2474441 (M.D. Fla. Apr. 20, 2021) (Scriven, J.).

Back in state court, Blue-Grace did not renew its request for temporary injunctive relief. Instead, (among other things) Blue-Grace amended the complaint to add Traffic Tech as a defendant on May 28, 2021. (Doc. 1-5 at 111, 114.) As grounds for amendment, Blue-Grace asserted that Traffic Tech had "successfully solicited several former Blue-Grace employees." (*Id.* at 123.) The state court granted the motion on June 22, 2021. (*Id.* at 180.) Blue-Grace filed the amended complaint on June 29, 2021, (*id.* at 181), but Blue-Grace did not add additional former employees as defendants. Instead, Blue-Grace sent a letter to Traffic Tech on July 7, 2021, in which it noted that it had "recently discovered that Traffic Tech employs other former Blue-Grace employees, including Mark Fox and Tyler Wilkiel." (Doc. 43-1 at 1.)

Six months later, on October 27, 2021, Defendants removed to federal court again. (Doc. 1.) On October 29, 2021, Blue-Grace moved for a preliminary injunction. (Doc. 10.) The motion noted that Blue-Grace would later request to amend the complaint to add Fox and Wilkiel as defendants. (*Id.* at 1 n.1.) The Court directed Defendants to respond

5

to the motion by November 19, 2021, and it set oral argument for November 29, 2021. (Doc. 18.) By November 15—more than two weeks after Blue-Grace filed its motion—Blue-Grace had not moved to amend the complaint. So the Court ordered Blue-Grace to inform the Court whether it still intended to do so. (Doc. 24.) The Court informed Blue-Grace that a motion to add additional defendants would void the oral argument and briefing schedule. (*Id.* at 1–2.)

On November 22, Blue-Grace filed a motion to amend the complaint and preliminary injunction motion to add Wilkiel, Fox, and Colle. (Doc. 27; Doc. 28.) The Court granted the motions, (Doc. 30), and Blue-Grace filed the operative complaint and motion on December 3, 2021, (Doc. 31; Doc. 32). Defendants responded to the motion on December 27, 2021. (Doc. 42.) On January 5, 2022, Blue-Grace moved for an opportunity to reply within seven days. (Doc. 48.) The Court granted the motion. (Doc. 49.) And Blue-Grace filed its reply on January 13, 2022. (Doc. 50.)

## II.   LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy" that is "the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)); a*ccord Cordis Corp. v. Prooslin*, 482 So. 2d 486, 489 (Fla. 3d DCA 1986). A court may grant injunctive relief only if a movant establishes (1) "a substantial likelihood of success on the

merits"; (2) "irreparable injury" without an injunction; (3) the movant's injury outweighs the harm an injunction may cause the opposing party; and (4) an injunction is not "adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *accord TransUnion Risk & Alt. Data Sols., Inc. v. Reilly*, 181 So. 3d 548, 550 (Fla. 4th DCA 2015). Since a preliminary injunction is an extreme remedy, courts do not grant it "unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (quotation omitted). Accordingly, "[f]ailure to show any of the four factors is fatal." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

## III.   ANALYSIS

The Complaint alleges that Fahey (Count I), Fox (Count III), Wilkiel (Count V), and Colle (Count VII) breached their employment contracts with Blue-Grace by working for Traffic Tech, a competing company, within the two-year non-compete period. (Doc. 31.) It further alleges that Traffic Tech aided and abetted the individual Defendants in the breach of their employment agreements (Counts X and XI). (*Id.*) Blue-Grace moves for a preliminary injunction against Fahey, Fox, Wilkiel, Colle, and Traffic Tech on these claims. (Doc. 32.)

For the Court to grant a preliminary injunction, Blue-Grace must make a sufficient showing on each of the traditional injunction factors. Even if Blue-Grace does so, a "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because the "basis of injunctive relief in the federal courts has always been irreparable harm," the Court begins there. *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quotation omitted). And here, the Court also ends there. Blue-Grace does "not carry the burden as to irreparable harm" so the Court finds it "unnecessary to address the other prerequisites to [] relief." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983).

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quotations omitted). A movant's failure to show "a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* A showing of irreparable injury must be "neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Id.* A former employee's breach of a restrictive covenant and "mere presence" at a competitor does not rise to the level of irreparable injury. *See TransUnion Risk & Alt. Data Sols., Inc. v. Challa*, 676 F. App'x 822, 825 (11th Cir. 2017) (per curiam).

### A. Choice of Law

Before reaching Blue-Grace's motion, the Court must address a "knotty choice-of-law" issue, namely whether federal or Florida law governs the standard for granting an injunction in a federal court exercising diversity jurisdiction. *Vital Pharms., Inc. v. Alfieri*, ___ F.4th ___, 2022 WL 179337, at *6 (11th Cir. 2022). Federal law governs here.

Federal courts "are required to apply the federal rules of civil procedure to the exclusion of any contrary state" rule. *Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (citing *Hanna v. Plumer*, 380 U.S. 460, 470–71 (1965)). Rule 65 "incorporates traditional federal equity practice." *Id.*; *see Vital Pharms.*, 2022 WL 179337, at *12 (Pryor, C.J., concurring) (concluding that the standards for a preliminary injunction are procedural for *Erie* purposes even if not incorporated in Rule 65). Thus, the Court must follow federal equity practice if a "clash" with Florida's standards for granting an injunction "is unavoidable." *Hanna*, 380 U.S. at 470; *accord TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan*, 625 F. App'x 403, 406 (11th Cir. 2015) (per curiam).

"Ordinarily, a federal court considering whether to award [preliminary] injunctive relief . . . applies a four-factor test historically employed by courts of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006). That test places a burden on the movant to "clearly establish[]" each of the four factors, *Siegel*, 234 F.3d at 1176 (quotation omitted), including that the asserted harm is irreparable, *see Sampson*, 415 U.S. at 88

(explaining the centrality of irreparable harm to federal equity practice). Evidence that a movant delayed in seeking an injunction "militates against a finding of irreparable harm." *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

Florida law presumes that a person seeking to enforce a valid restrictive covenant suffered irreparable harm. *See* § 542.335(1)(j), Fla. Stat. Thus, Florida law lifts the burden of establishing irreparable harm from the movant's shoulders and shifts it to the nonmovant, who must rebut the presumption. In effect, Florida's presumption replaces the "equitable discretion" that "must be exercised consistent with traditional principles of equity" with a near "categorical rule" that irreparable harm is established. *eBay Inc.*, 547 U.S. at 393–94 (chiding courts for abandoning the traditional equity factors in patent infringement claims and for adopting a presumption in favor of injunctions). It also negates the oft "reiterated standard [that] requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. In other words, a "presumption" of irreparable harm is "contrary to traditional equitable principles." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987).

An unpublished Eleventh Circuit opinion reaches the opposite conclusion, reasoning that Florida's statutory presumption "works in tandem" with Rule 65's irreparable harm requirement. *See MacLachlan*, 625 F. App'x at 406. *MacLachlan* submits that the prima facie showing that a restrictive covenant is valid, was breached, and protects

a legitimate business interest, *see* § 542.335(1)(j), Fla. Stat., is equal to a movant's burden to show that an asserted injury is "neither remote nor speculative, but actual and imminent," and "cannot be undone through monetary remedies." *City of Jacksonville*, 896 F.2d at 1285 (quotation omitted). Unpublished opinions are only persuasive authority. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent . . . ."). The Court is not persuaded.

As applied, Florida's presumption eliminates the movant's burden to show harm that cannot be remedied through damages. *Compare T.K. Commc'ns, Inc. v. Herman*, 505 So. 2d 484, 486 (Fla. 4th DCA 1987) ("Where a covenant not to compete is violated, irreparable injury is presumed and does not have to be proven to obtain an injunction."), *with City of Jacksonville*, 896 F.2d at 1286 (requiring the movant "demonstrate irreparable injury entitling it to preliminary injunctive relief"). Florida's presumption shifts the burden to the nonmovant, who must show that his acts "did not cause irreparable harm." *Challa*, 676 F. App'x at 825. In contrast, Rule 65 "does not place upon the [nonmovant] the burden of coming forward and presenting its case against a preliminary injunction." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 442–43 (1974) ("The burden was on the [movants] to show that they were entitled to a preliminary injunction, not on the [nonmovant] to show that they were not.").

The Court concludes that § 542.335(1)(j)'s presumption of irreparable harm conflicts with traditional federal equity practice and does not govern in a federal diversity action for a preliminary injunction. The movant "must prove irreparable harm without the presumption afforded by Florida law." *Vital Pharms.*, 2022 WL 179337, at *12 (Pryor, C.J., concurring); *see S. Wine & Spirits of Am., Inc. v. Simpkins*, No. 10-21136, 2011 WL 124631, at *8 (S.D. Fla. Jan. 14, 2011) (Cooke, J.) (concluding that Florida's presumption of irreparable harm does not apply in federal court).

As explained in detail below, Blue-Grace's delay in pursuing an injunction and its lack of affirmative evidence of injury defeat its claims of irreparable harm. Accordingly, the motion is denied. However, even if the Florida's presumption of irreparable harm applied, the outcome would be the same as Defendants rebut the presumption through the showing of substantial delay by Blue-Grace.

## B. Presumption of Irreparable Harm

Under Florida law, "violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." § 542.335(1)(j), Fla. Stat.[3] That is so "because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the

---

[3] A similar presumption applies to cases involving tortious interference with business relationships. *See Special Purpose Accts. Receivable Coop Corp. v. Prime One Cap. Co.*, 125 F. Supp. 2d 1093, 1105 (S.D. Fla. 2000) (Gold, J.) (citing *Dotolo v. Schouten*, 426 So.2d 1013, 1015 (Fla. 2d DCA 1983)).

employee's breach of the agreement." *Capraro v. Lanier Bus. Prods., Inc.*, 466 So. 2d. 212, 213 (Fla. 1985) (quotation omitted). When in force, the presumption means that "a party seeking to enforce a restrictive covenant by injunction need not directly prove that the defendant's specific activities will cause irreparable injury." *Am. II Elecs., Inc. v. Smith*, 830 So. 2d 906, 908 (Fla. 2d DCA 2002). The presumption applies if the restrictive covenant was violated and if it protects a legitimate business interest. *See Fam. Heritage Life v. Combined Ins. Co.*, 319 So. 3d 680, 685 (Fla. 3d DCA 2021).

It is undisputed that the individual Defendants violated their contractual obligations by working for Traffic Tech, a competitor of Blue-Grace, within two years after their employment with Blue-Grace. Blue-Grace claims the restrictive covenants protect its confidential business information, which is a legitimate business interest under Florida law that may justify enforcement of a restrictive covenant. *See* § 542.335(1)(b)(2), Fla. Stat.; *see also Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1233–36 (11th Cir. 2009). Defendants raise strong challenges to the sufficiency of Blue-Grace's evidence of protectable confidential business information under Florida law. (Doc. 42 at 24–29); *see* § 542.335(1)(b), Fla. Stat. (requiring the movant "plead and prove" a legitimate business interest that justifies the covenant). However, the Court assumes that a legitimate business interest justifies the restrictive covenants.[4] Accordingly, Blue-Grace is entitled to a

---

[4] The Court assumes that a legitimate business interest justifies the restrictive covenants because doing so does not change the outcome, and thus it is unnecessary to make a conclusion on the application of this

presumption that they have suffered and will continue to suffer irreparable harm absent a preliminary injunction.

Of course, the presumption is rebuttable. *See JonJuan Salon, Inc. v. Acosta*, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006). A defendant may defeat the presumption by evidence "establish[ing] the absence of injury." *Reilly*, 181 So. 3d at 550 (quotation omitted). "Whether [an] employee successfully rebuts the presumption of irreparable harm is a fact-sensitive inquiry that will vary from case to case." *Challa*, 676 F. App'x at 826 n.3.

Defendants argue that Blue-Grace's delay rebuts the presumption. The Court agrees. The course of this litigation showcases Blue-Grace's delay in seeking a preliminary injunction and rebuts the presumption, fatally undermining its attempt to show "'imminent' irreparable harm." *Wreal*, 840 F.3d at 1248 (quotation omitted).

Preliminary injunctions are "premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *See id.* A plaintiff's failure to act speedily undermines his claim that his injuries are irreparable.[5] Indeed,

---

aspect of Florida law. Also, analysis of legitimate business interests usually occurs under the substantial likelihood of success on the merits prong, *see, e.g., Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (Dimitrouleas, J.), which the Court does not reach.

[5] The parties assume that the traditional delay analysis applies to claims arising under § 542.335. (Doc. 42 at 16–20; Doc. 50 at 1–2.) No party identifies a case holding that Florida law does not recognize the equitable principle that delay tends to negate a claim of irreparable harm. And the Court is not aware of any.

Were Florida law to reject consideration of delay, it would conflict with "traditional federal equity practice." *Ferrero*, 923 F.2d at 1448. And "federal courts are required to apply [federal procedure] to the exclusion of

"unexplained delays of a few months negate any claim of irreparable harm on a preliminary injunction motion" and many courts "typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-cv-23905, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (Goodman, Mag. J.) (quotation and citations omitted); *see also Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-cv-20862, 2021 WL 3618227, at *9 (S.D. Fla. Aug. 16, 2021) (Bloom, J.) (collecting cases denying injunctive relief after plaintiff delayed for between two and twelve months).

The extensive chronology of this litigation begins on November 27, 2020, when Fahey resigned from Blue-Grace. He began work with Traffic Tech a few days later. Blue-Grace sued Fahey and moved for a temporary restraining order on December 1, 2020. Fahey removed to federal court on January 8, 2021. Blue-Grace promptly refiled the motion. However, the court denied the motion on procedural grounds and without prejudice four days later. Blue-Grace did not refile the motion or seek other injunctive relief. Instead, it moved to remand more than a month later. After an additional two months, the court remanded to state court.

The case remained in state court from April 27 through October 27, 2021. Blue-Grace did not renew its request for injunctive relief. Instead, on May 28, 2021, Blue-Grace

---

any contrary state" rule. *Id.* (concluding that federal courts exercising diversity jurisdiction must apply the traditional injunction factors instead of a Georgia statute that presumed equitable relief was appropriate).

moved to amend the complaint to add Traffic Tech as a defendant, asserting that Traffic Tech had "successfully solicited several former Blue-Grace employees." (Doc. 1-5 at 111, 123.) Over Fahey's objection, the state court allowed Blue-Grace to amend on June 22, 2021. (*Id.* at 172, 180.) And Blue-Grace filed the amended complaint on June 29, 2021. (*Id.* at 181.)

Around that time, Blue-Grace learned that Fox and Wilkiel were working at Traffic Tech in violation of their restrictive covenants. (Doc. 43-1 at 1.) Blue-Grace sent a letter to Fox, Wilkiel, and Traffic Tech on July 7, 2021. (*Id.*) But Blue-Grace did not sue Fox and Wilkiel or move to amend the complaint to add them as defendants to the existing suit.

After Defendants answered the amended complaint, Blue-Grace did not file for a preliminary injunction against Fahey and Traffic Tech. Instead, on July 22, 2021, it moved to strike their affirmative defenses and to dismiss their counterclaims. (Doc. 1-5 at 276, 282.) In response, Defendants amended their answer. And Blue-Grace filed an amended motion on August 20, 2021, moving to dismiss Defendants' counterclaims. (*Id.* at 323.)

On October 27, 2021, Defendants removed to federal court for a second time. Blue-Grace moved for a preliminary injunction against Fahey and Traffic Tech on October 29, 2021. But instead of continuing to pursue injunctive relief against these defendants, Blue-Grace again moved to amend the complaint and the preliminary injunction motion to add

16

additional defendants. It filed the motion to amend on November 22, 2021. By this time, Blue-Grace had known of Fahey's breach of the employment contract for twelve months. It had known of Traffic Tech's role for at least six months. It had known of Fox and Wilkie's breach of their employment contracts for at least five months. Its decision to amend the October 29, 2021 motion added almost three months of additional delay until the amended motion was ripe for decision.

Considered together, Blue-Grace's litigation strategy prompted extensive delays. Blue-Grace knew about Fahey's breach for thirteen months before this motion was filed. Even if the Court accepts that Blue-Grace did not refile its motion during its first stint in federal court because it did not believe the court had jurisdiction, (Doc. 50 at 1), nine months remain attributable to Blue-Grace's delay. As for Traffic Tech, Blue-Grace delayed at least seven months. And Blue-Grace waited at least six months to amend the complaint to add Fox and Wilkie as defendants. Courts within the Eleventh Circuit have found similar periods—or shorter ones—sufficient delay to defeat an assertion of irreparable harm. *See, e.g., Wreal*, 840 F.3d at 1248 (five-month delay); *Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-cv-21484, 2021 WL 2652774, at *9–10 (S.D. Fla. June 21, 2021), *report and recommendation adopted*, No. 21-cv-21484, 2021 WL 3404040 (S.D. Fla. Aug. 4, 2021) (Moreno, J.) (collecting cases showing that a delay of four or five months is often fatal); *Hi-Tech Pharms., Inc. v. Herbal Health Prods., Inc.*, 311 F. Supp. 2d 1353,

1355 (N.D. Ga. 2004), *aff'd*, 132 F. App'x 348 (11th Cir. 2005) (four-month delay); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (Lenard, J.) (three-month delay).

The record does not specify when Blue-Grace learned of Colle's behavior. Defendants assume that Blue-Grace learned of Fox, Wilkiel, and Colle's acts at the same time. (Doc. 42 at 17.) Blue-Grace does not deny it. Instead, Blue-Grace's reply tends to confirm that it was contemporaneous, as it notes that "when discovery commenced it learned of Fox, Wilkiel and Colle's employment with Traffic Tech." (Doc. 50 at 1–2.) That understanding is further bolstered by Blue-Grace's allegation on May 28, 2021, that Traffic Tech had "successfully solicited *several* former Blue-Grace employees." (Doc. 1-5 at 123 (emphasis added).) In legal and common parlance, "several" requires more than two, suggesting that Blue-Grace was not referring to just Fox and Wilkiel. *See Several, Black's Law Dictionary* (11th ed. 2019) (defining "several" as "more than one or two"). If that is so (as the evidence suggests it is), Blue-Grace knew of its claims against Colle before May 28, 2021. Thus, Blue-Grace's delay toward its claims against Colle would be comparable to the delay toward Fox and Wilkiel. Regardless, the result would be the same even if Blue-Grace learned of Colle's behavior later. Blue-Grace's claims against Colle are nearly identical to those against Fox and Wilkiel, and less extensive than those against Fahey and

Traffic Tech. Blue-Grace's pattern of delay toward the other Defendants belies the suggestion that its claims against Colle are so serious as to be irreparable.

This procedural history shows that Blue-Grace does not see its alleged injuries as imperative. Instead, "such delay demonstrates a lack of urgency." *Florida v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1305 (11th Cir. 2021) (Lagoa, J., dissenting). Blue-Grace tries to lay blame for the delays on procedural obstacles and Defendants' obstruction. (Doc. 50 at 2). *But see Blue-Grace*, 2021 WL 2474441, at *4 (concluding that there was no "evidence that Fahey removed this case . . . to delay the litigation"). But the Court does not agree.

Blue-Grace's asserted reasons are insufficient to justify the period of delay as the procedural history shows that Blue-Grace believes that objectives other than procuring preliminary injunctive relief are more valuable. For example, Blue-Grace's challenges to Fahey and Traffic Tech's affirmative defenses and counterclaims resulted in delays. As did Blue-Grace's nine-day delay in asking for a right of reply, which itself sought an additional seven days to file. (Doc. 48.) Beyond that, much of the delay attributable to Blue-Grace is due to its attempts to bring all the Defendants under the umbrella of a single case. That goal inevitably conflicted with speed. A movant desiring a preliminary injunction must prize speed. *See Wreal*, 840 F.3d at 1248 (explaining that a "party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of

irreparable harm"); *Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d at 1356 ("Plaintiff's dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm."). Speed was particularly necessary here since much of Blue-Grace's alleged harms relate to information that grew more stale with each passing month.

In sum, these litigation choices—and the delay that they caused—rebut the presumption of irreparable harm because they show that Blue-Grace does not believe that the injuries it allegedly suffers require immediate injunctive relief. *Cf. Capraro*, 466 So. 2d at 213 ("Immediate injunctive relief is the essence of [preliminary injunction] suits . . . .").

## C. Evidence of Irreparable Harm

Since Defendants rebut the presumption of irreparable harm, Blue-Grace must clearly carry its burden of showing that its injury is irreparable. The section of Blue-Grace's motion discussing irreparable harm focuses exclusively on the presumption. Without it, Blue-Grace has little to support a finding of irreparable harm. *See Colucci v. Kar Kare Auto. Grp., Inc.*, 918 So. 2d 431, 440 (Fla. 4th DCA 2006) (reversing an order granting a preliminary injunction, in part, because "there [was] little evidence on the record that [the plaintiff] did, in fact suffer actual harm"). Since the argument Blue-Grace expressly relies upon fails, the Court would be justified in stopping here. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it

. . . .”). But drawing from other portions of the motion, Blue-Grace's argument for irreparable harm is likely that the individual Defendants learned confidential information while at Blue-Grace that they can use to its detriment at their new positions at Traffic Tech. More specifically, it cites to “improper disclosure of Blue-Grace's business processes, practices, and methods, trade secrets and pricing information to third parties due to the Individual Defendants' prior access to this information while at Blue-Grace.” (Doc. 32 at 23.)

However, this assertion of harm—even if it was properly preserved—is belied by Blue-Grace's pattern of delay. Delay in seeking an injunction “militates against a finding of irreparable harm,” *Wreal*, 840 F.3d at 1248, and is “irreconcilable with the urgency that must underly a preliminary injunction,” *Malicious Women Candle Co., LLC v. Cox*, 506 F. Supp. 3d 1245, 1247 (M.D. Fla. 2020) (Dalton, J.) (explaining that delay “weighs strongly” against irreparable harm). If the individual Defendants possess confidential information that is causing Blue-Grace irreparable harm in the hands of a competitor, Blue-Grace would not have delayed as it has done. Instead, it would have acted “with speed or urgency in moving for a preliminary injunction.” *Wreal*, 840 F.3d at 1248. Its failure to do so “necessarily undermines a finding of irreparable harm.” *Id.* This is so because “the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial.” Given this purpose, “haste . . . is often necessary if those positions are to be

preserved." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (discussing the haste necessary in court procedures and decisions, though less can hardly be expected from the party seeking relief).

On top of its delay, Blue-Grace's motion also fails to "clearly establish" the irreparable harm essential to such a "drastic" and "extraordinary" remedy. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (quotations omitted). For the most part, Blue-Grace's claims of confidential information are exceedingly generic. Even in reply to Defendants' contention that Blue-Grace failed to allege its information with specificity, Blue-Grace does little more than repeat the same assertions. *See Colucci*, 918 So. 2d at 439 (faulting a trial court for concluding that a plaintiff's information was protected when there was no evidence "in the record that would indicate what the trial court considered to be confidential"). And the confidential information Blue-Grace alleges with the most specificity are the documents Fahey took with him from Blue-Grace.[6] But Blue-Grace points to no evidence to counter Fahey's affidavit that he has not disclosed, used, or reviewed these documents since he left Blue-Grace except to respond to Blue-Grace's discovery requests. (Doc. 43-15 at 7–8.) Left

---

[6] Blue-Grace knew that Fahey possessed these documents before it decided to amend the complaint to add Traffic Tech as a defendant on May 28, 2021, and before it decided to make the subsequent delays discussed above. (Doc. 1-5 at 114, 122); *see Tiber Lab'ys, LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) (explaining that delay "negat[es] the idea of irreparability" (quotation omitted)).

unrebutted that Fahey has not used that information, (*id.* at 8), it can hardly be the basis of irreparable harm.

Nor does Blue-Grace put forward sufficient evidence to respond to the individual Defendants' affidavits. They aver that they have not used or disclosed Blue-Grace's information, would derive no benefit from doing so, and have no use for Blue-Grace's information. (Doc. 43-14 at 2–3; Doc. 42 at 12.) Defendants' also attest that all the carrier information used at Blue-Grace, including the material on ORCA, is publicly available.[7] (Doc. 43-16 at 2–3; Doc. 43-17 at 2–4, 6; Doc. 43-18 at 2–4); *cf. Anich Indus., Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000) (explaining that "information commonly known in the industry" is not entitled to protection (citing *Keel v. Quality Med. Sys., Inc.*, 515 So.2d 337 (Fla. 3d DCA 1987))). And the individual Defendants say that any information they possess is now stale, given that they left nearly a year ago. They claim that this information—particularly as to carrier pricing strategies—is out of date since the "shipping and transportation market is constantly changing." (Doc. 43-15 at 10.)

---

[7] Blue-Grace argues in its reply that Wilkiel's admission that he accessed ORCA to retrieve phone numbers compromises Defendants' position that the information on ORCA is otherwise public. Perhaps it does. But the concession does not convincingly show that Blue-Grace suffered irreparable harm from the retrieval of a few phone numbers.

In sum, Blue-Grace fails to supply or identify sufficient evidence to establish irreparable harm.[8] Considering Blue-Grace and Defendants' evidence, it is—at best—merely speculative that the individual Defendants or Traffic Tech are using or will use Blue-Grace's information and that it will suffer irreparable injury from that usage. Of course, a speculative harm is not "actual and imminent" and, thus, cannot be an irreparable one. *See Challa*, 676 F. App'x at 827 (quoting *Siegel*, 234 F.3d at 1176–77). Accordingly, Blue-Grace's assertions are not adequate to "clearly carr[y]" its burden on irreparable harm. *Jefferson Cnty.*, 720 F.2d at 1519 (quotation omitted). Further, since Blue-Grace "unduly delayed" in seeking an injunction, "'thereby negating the idea of irreparability,' a preliminary injunction should not issue." *Tiber Lab'ys, LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) (quoting *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996)).

### D. Attorney's Fees

Blue-Grace and Defendants request attorney's fees. Florida law permits a court to award attorney's fees and costs to the prevailing party. *See* § 542.335(1)(k), Fla. Stat. However, awarding attorney's fees and costs is discretionary. *Tesla Elec., Armature &*

---

[8] Blue-Grace requested oral argument on the motion. (Doc. 33.) However, Blue-Grace clarified that its "request [was] for oral argument only, and not an evidentiary hearing." (*Id.* at 1 n.1.) Since oral argument would not help Blue-Grace carry its evidentiary burden, the Court denies the request.

*Mach., Inc. v. JLM Adv. Tech. Servs., Inc.*, 128 So. 3d 865, 866 (Fla. 1st DCA 2013) (per curiam).

Upon consideration of the record, the Court declines to award Defendants attorney's fees. While Defendants prevail, they do so only narrowly. They prevail primarily because Blue-Grace unduly delayed in seeking relief from the individual Defendants' undisputed violations of their contractual obligations. Adding attorney's fees to double that victory would produce a windfall.

## IV.   CONCLUSION

Blue-Grace moves for injunctive relief against Fahey, Wilkiel, Fox, Colle, and Traffic Tech. The Court denies the motion because, in the light of its delay and it limited evidence, Blue-Grace fails to show that it will suffer irreparable harm without a preliminary injunction.

Accordingly, the following is **ORDERED**:

1.      Blue-Grace's Motion for a Preliminary Injunction is **DENIED**. (Doc. 32.)

2.      Defendants' request for attorney's fees is **DENIED**. (Doc. 42.)

**ORDERED** in Tampa, Florida, on February 7, 2022.

Kathryn Kimball Mizelle
United States District Judge

25