## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLUE-GRACE LOGISTICS LLC,

     Plaintiff,

v.                                 Case No: 8:21-cv-2523-KKM-MRM

DAVID FAHEY, et al.,

     Defendants.

_____

### ORDER

Blue-Grace Logistics, LLC, sues four former employees, David Fahey, Mark Fox, Tyler Wilkiel, and Jason Colle for failing to abide by the restrictive covenants in their employment contracts, and their new employer, Traffic Tech, Inc., for interfering with those contractual relationships. (Doc. 31.) Fahey and Traffic Tech counter, claiming that Blue-Grace tortiously interfered with their business relationship and violated Florida's Deception and Unfair Trade Practices Act (FDUTPA). (Doc. 46.)

Blue-Grace moves for summary judgment on its claims and Fahey and Traffic Tech's counterclaims. (Doc. 89.) Defendants move for summary judgment on Blue-Grace's claims and for sanctions against Blue-Grace for discovery violations. (Doc. 91; Doc. 93.) Because Blue-Grace has not proven a legitimate business interest justifying the restrictive

covenants, its claims fail. But because genuine disputes of fact exist over Traffic Tech and Fahey's counterclaims, they will proceed to trial. Finally, Defendants' Motion for Sanctions is denied as moot.

## I.   UNDISPUTED FACTS

Blue-Grace and Traffic Tech are third-party logistics companies, which provide "transportation management and solutions" to their customers. (Doc. 90 ¶¶ 1–2.) While their customer bases and business models differ, both companies provide "truckload and less-than-full truckload services for customers throughout the continental United States" and internationally. (*Id.*) As part of that service, the companies find and contract with independent carriers to haul their customers' freight. At Blue-Grace, the carrier sales department finds, negotiates with, and books independent carriers to take a customer's freight from one location to another. (Doc. 89-11 at 40–41.)

Blue-Grace is based in Hillsborough County, Florida, but maintains an office in Chicago, Illinois. Between August 2016 and April 2018, Blue-Grace hired Fahey, Fox, Wilkiel, and Colle to work in the Chicago office in the carrier sales department. Each signed an extensive employment agreement governed by Florida law. (Doc. 89-3; Doc. 89-5; Doc. 89-7; Doc. 89-9.) Each agreement included a confidentiality and nondisclosure clause, a non-solicitation clause, and a non-competition clause that prohibited former employees from working for a competing third-party logistics company anywhere in the

2

United States for two years after their employment ended. (Doc. 90 ¶¶ 7–10.) The agreement also required the employees to stipulate that these restrictions were reasonable. (*Id.* ¶ 11.)

Each employee resigned between November 2020 and March 2021. All four accepted positions at Traffic Tech within the two-year period specified in the non-competition provision. (*Id.* ¶¶ 13–16.) They all now work out of Traffic Tech's Chicago headquarters in similar or supervisory positions to those they had at Blue-Grace. (*Id.* ¶¶ 17–22.) Prior to Fahey's resignation, he alleges that Blue-Grace's CEO called and said, "Look Dave, you're not going anywhere. I'm not losing you, you're not going anywhere. Plus, I would bury you under the courthouse if you tried." (Doc. 43-15 ¶ 18; Doc. 89-6 at 23.) This caused him to reconsider his resignation and Traffic Tech increased his signing bonus by $50,000 to get him to make the switch. (Doc. 94-14 at 32; Doc. 101-9; Doc. 101-10.)

Blue-Grace claims that the individual Defendants acquired confidential and proprietary information while they worked at Blue-Grace. They had access to Blue-Grace's software program, ORCA, which housed carrier information, including lanes, rates, contact information, and "notes of conversations with carrier reps." (Doc. 108 at 5, 13–14.) Fahey also emailed himself a document shortly before he left with information relating to customers, profits, market trends, and sales. (Doc. 89 ¶ 17.)

The extensive procedural history in this case is recounted in the order denying Blue-Grace's motion for preliminary injunction. *See Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 463–64 (M.D. Fla. 2022.) Relevant here, Blue-Grace sued Fahey in Florida state court on December 1, 2020. (Doc. 1-4.) After Fahey removed to federal court and the case was remanded, Blue-Grace amended the complaint to add Traffic Tech on June 29, 2021. (Doc. 1-5 at 180.) Fahey and Traffic Tech answered and brought three counterclaims in state court, and then removed to federal court again in October 2021. (Doc. 1; Doc. 1-3.) Back in federal court, Blue-Grace amended its complaint to add Colle, Wilkiel, and Fox. (Doc. 30; Doc. 31.)

Blue-Grace now moves for summary judgment on its claims and Fahey and Traffic Tech's counterclaims. Defendants move for summary judgment on Blue-Grace's claims. Defendants also move for sanctions because Blue-Grace "shirked its obligation to disclose and support [their] purported damages under Rule 26." (Doc. 91 at 1.)

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* at 323.

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Dareing v. Bank of Am. Corp.*, 705 F. App'x 882, 885 (11th Cir. 2017) (per curiam). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III.   ANALYSIS

Blue-Grace moves for summary judgment on its claims, arguing that the undisputed facts show that the individual Defendants breached their employment agreements by working at Traffic Tech, and that Traffic Tech assisted them in their breaches. Defendants argue they are entitled to summary judgment on Blue-Grace's claims because the undisputed facts show that the contracts are unenforceable under Florida law and, in the alternative, Blue-Grace fails to prove damages. Blue-Grace also moves for summary judgment on Fahey and Traffic Tech's counterclaims, arguing that they are barred by Florida's litigation privilege.

### A. Blue-Grace's Claims

In Counts I–VIII, Blue-Grace alleges that Defendants Fahey, Fox, Wilkiel, and Colle breached their employment agreements, and that Blue-Grace is therefore entitled to injunctive relief and damages. In Count IX and X, Blue-Grace alleges that Traffic Tech tortiously interfered with Blue-Grace's contractual relationships with each former employee, entitling it to damages and injunctive relief. Finally, in Count XI, Blue-Grace

alleges that Traffic Tech aided and abetted the individual Defendants in breaching the restrictive covenants in their employment agreements.

### 1. Breach of Contract Claims Against the Individual Defendants

Under Florida law, which governs according to the choice-of-law provision in each employment contract, a plaintiff must generally prove three elements to succeed on a breach of contract claim: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Here, "[i]t is undisputed that the individual Defendants violated their contractual obligations by working for Traffic Tech, a competitor of Blue-Grace, within two years after their employment with Blue-Grace." *Blue-Grace Logistics LLC*, 340 F.R.D. at 467 (M.D. Fla. 2022). But the parties dispute whether those contractual obligations are enforceable.

Restrictive covenants are generally unenforceable under Florida law as restraints on trade. *See* § 542.18, Fla. Stat. ("Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful."); *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 785 (Fla. 2017) ("[C]ovenants 'whose sole purpose is to prevent competition per se'" are "void against public policy."). But where such covenants are set forth in writing, "reasonable in time, area, and line of business," and "supported by a legitimate business interest" they are not prohibited. § 542.335(1), Fla. Stat. To be enforceable, "'there must be special facts present over and above ordinary competition' such

7

that, absent a non-competition agreement, 'the employee would gain an unfair advantage in future competition with the employer.' " *White*, 226 So. 3d at 785.

Legitimate business interests include, but are not limited to, trade secrets or other "valuable confidential business or professional information," "substantial relationships with specific prospective or existing customers, patients, or clients," "customer, patient, or client goodwill," or "extraordinary or specialized training." *Id.* at § 542.335(1)(b). The party seeking enforcement of a restrictive covenant must "plead and prove" the existence of a legitimate business interest and "that the contractually specified restraint is reasonably necessary to protect the legitimate business interest." *Id.* at § 542.335(1)(c). Here, because Blue-Grace fails to plead the existence of a legitimate business interest, the restrictive covenants are "void and unenforceable." *Id.* at § 542.335(1)(b).

### a. Confidential and Proprietary Information

In support of its motion for summary judgment, Blue-Grace lists eight interests in "proprietary and confidential information, including its (1) business processes, practices, and methods; (2) valuable confidential business information; (3) computer programs, software, and applications; (4) marketing and advertising information; (5) pricing information; (6) carrier, vendor, and distributor lists and contact information; (7) customer information and lists; and (8) prospective customer information." (Doc. 89 at 13–14.) But simply saying that something is proprietary and confidential does not make it so, and Blue-

Grace has the burden of pleading and proving this legitimate business interest. As earlier noted at the preliminary injunction stage, these "claims of confidential information are exceedingly generic." *Blue-Grace*, 340 F.R.D. at 470.

To sufficiently plead and prove a legitimate business interest in confidential or proprietary information, an employer must articulate the information that it deems confidential or proprietary. *See Passalacqua v. Naviant, Inc.*, 844 So. 2d 792, 796 (Fla. 4th DCA 2003) (finding no legitimate interest where employer failed to "articulate how any activity, method or technique utilized by [the company] was unique or proprietary in any way"); *see also Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC*, 223 F. Supp 3d 1221 (M.D. Fla. 2016) (Lazzara, J.) ("Generic allegations do not establish a legitimate business interest."). Additionally, "information commonly known in the industry and not unique to [the] allegedly injured party [is] not 'confidential' and thus not entitled to protection." *Anich Indus. Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000). Finally, the statute requires not only that the information be "confidential," but also that it be "valuable." § 542.335(b)(2). An employer must prove that the employees could use the information to gain an unfair advantage, *Passalacqua*, 844 So. 2d at 796, and "[g]eneralized statements of concern cannot substitute for proof." *Gould & Lamb, LLC v. D'Alusio*, 949 So. 2d 1212, 1214 (Fla. 2d DCA 2007) (upholding trial court's ruling of no legitimate

interest where the employer "spoke in the briefest and most general terms" of a desire to protect vague categories of information).

Throughout the motion, Blue-Grace repeatedly speaks of "confidential" and "proprietary" information, but it never explains exactly what that information is or what makes it proprietary or confidential. Even where it describes the information with slightly more detail, it fails to explain the information's value.

First, Blue-Grace points to its "proprietary software, ORCA, that contained a confidential compilation of information on carriers and trucking companies that the Individual Defendants used to contact carriers and better perform their jobs," including "historical carrier records and even 'notes of conversations that carrier reps have had directly with carriers.' " (Doc. 108 at 5, 13–14.) But Defendants point to deposition testimony asserting that "information regarding carriers is freely available through publicly available websites," including "contact information, lanes, and even rates." (Doc. 93 at 13.) For example, Wilkiel testified that carrier "phone numbers are very easy and accessible" on public websites and that ORCA only provided "ease of access." (Doc. 94-17 at 26.) And Fahey testified that the same is true for what lanes each carrier runs, what equipment it uses, and where the carrier is based. (Doc. 94-14 at 16.) Blue-Grace's corporate representative agreed. (Doc. 94-12 at 21.) Defendants also note that Blue-Grace has not provided the "notes" or "historical" carrier records, "leaving the Court only to guess" as to

the specific information in these notes and records. (Doc. 116 at 6.) I agree. Because the carrier contact and lane information are freely available, the information is not confidential. *See Anich Indus.* 751 So.2d at 771. And without specifying what these "notes" and "historical carrier records" are, Blue-Grace fails to point to any evidence that a reasonable jury could determine is valuable.

Defendants further point to testimony that the market in the logistics field is "chaotic" and "unstable" and information of this type becomes stale quickly, making it of little value. (Doc. 93 at 15.) And Blue-Grace fails to counter this point or otherwise explain the value of the information, apart from a conclusory statement that "[t]he individual defendants can use Blue-Grace's confidential information, and the knowledge they developed, to gain a competitive advantage in their positions or otherwise use the information to benefit Traffic Tech in direct competition with Blue-Grace." (Doc. 108 at 15). But simply concluding that the information gives the individual Defendants an advantage is not enough. *See Gould*, 949 So. 2d at 1214 (noting that "[g]eneralized statements of concern" are not enough). Blue-Grace must point to evidence in the record establishing this point. *Celotex Corp.*, 477 U.S. at 324; *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981) (holding that where non-movant responds with nothing "more than a repetition of his conclusional allegations, summary judgment for the defendant was not only proper but required"). In short, Blue-Grace mentions these notes and records, but fails

to satisfy its burden as to how "the employee would gain an unfair advantage in future competition with the employer" by having knowledge of them. *White*, 226 So. 3d at 785. Without that showing, a reasonable jury cannot find that Blue-Grace possessed a legitimate business interest in the restrictive covenants.

Second, Blue-Grace mentions a document Fahey took with him titled "BG Sales Truckload Analysis" which "contains Blue-Grace's information relating to customer names, year-to-date gross profits, market trends, transactional truck load metric trending, customer trends, shipments and gross profits per customer, customer account management information, Q1 2021 financial forecasts, customer quote performance, and Blue-Grace sales information, among other things." (Doc. 89 ¶ 17.) This kind of information might qualify as the type of confidential information that creates a legitimate business interest. *See e.g.*, *Johnson Controls, Inc. v. Rumore*, No. 8:07-cv-1808, 2008 WL 203575, at *5 (M.D. Fla. Jan. 23, 2008) (McCoun, Mag. J.) (finding a legitimate interest in "customer lists, business, service and maintenance plans, sales, revenue and financial information, including pricing information"); *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 564 (Fla. 3d DCA 2010) (finding similar information valuable where the former employee "knew exactly which products were more profitable"). But Defendants again assert that Blue-Grace has not shown this information was still relevant "given fluctuations in the industry," which Blue-Grace's corporate representative agreed led to rate changes and

customers having to rebid their freight. (Doc. 93 at 11, Doc. 94-12 at 25–26.) Blue-Grace makes no argument that the information is still relevant and thus useful in the hands of its competitor. So Blue-Grace again fails to meet its burden of showing that the information is valuable. Lastly, even if Blue-Grace satisfied its burden of showing that the document created a legitimate business interest, the enforcement of the restrictive covenants would be applicable only to Fahey. Blue-Grace makes no allegation that any of the other individual Defendants have this document or the information contained in it.

### b. Training

Blue-Grace passively mentions a legitimate interest in "training" but points to nothing in the record that explains what this training consisted of or why it was "specialized" or "extraordinary." *See* § 542.335(1)(b)(5); *compare Passalacqua*, 844 So. 2d. at 797 (no legitimate interest in training where the training program consisted of "two to three hours on each of two consecutive days" and a review of a manual and "generic" sales tactics) *with Balasco v. Gulf Auto Holding, Inc.*, 707 So. 2d 858, 860 (Fla. 2d DCA 1998) (explaining that a six-month training program with a full time training manager qualified as specialized training sufficient to create a legitimate business interest). Therefore, Blue-Grace fails to prove a legitimate business interest in any training it provided to the individual Defendants.

### c. Carrier Relationships

Finally, Blue-Grace asserts a legitimate business interest in relationships with carriers. (Doc. 108 at 15–17; Doc. 113 at 2–3.) Defendants argue that carrier relationships cannot support a finding of a legitimate business interest because carriers are vendors, not customers or clients. I agree.

While the list of protectable interests in § 542.335 is not exclusive, it informs the kinds of interests that may be considered legitimate. The statute protects "customer" and "client" relationships because when an employee forms those relationships and takes them to a new company, he has a competitive advantage over his old company in gaining that customer's business. *See Reliance Wholesale, Inc.*, 51 So. 3d at 565. Though other relationships *may* qualify as legitimate business interests, the protection of those relationships must be necessary to prevent unfair competition.

For example, in *White*, the Florida Supreme Court held that relationships with "referral sources" may constitute a legitimate business interest. 226 So. 3d at 777. There, the plaintiffs were home health companies who depend on referrals from doctors and hospitals to get patients. Defendants were marketing representatives who were responsible for "cultivating relationships with referral sources in the hope of securing future patient referrals." Even though the "patients have the ultimate decision" as to which home health service they select, patients were often required to receive a referral from a doctor before

14

receiving care from a home health company. The "importance of referrals to [home health companies could ]not be overstated" because it directly related to a home health company's ability to gain new customers. Even in *White*, the Florida Supreme Court remanded for the trial court to determine whether the relationship constituted a legitimate business interest because a trial court was better suited to determine "depending on the context and proof adduced" whether "special facts" existed such that "protecting referral sources may be necessary to prevent unfair competition." *Id.* at 786.

Vendor and supplier relationships, on the other hand, do not generally lend to such a competitive advantage. *See Concrete Surface Innovations, Inc. v. McCarty*, No: 6:10-cv-568, 2010 WL 1930971, at *6–7 (M.D. Fla. May 13, 2010) (Antoon, J.) (determining that "vendors of a product that is necessary for some jobs to be awarded . . . are not akin to 'clients' or 'customers' "); *Southern Wine & Spirits of America, Inc.*, No. 10-21136-CIV, 2011 WL 124631, at *3–4 (S.D. Fla. Jan. 14, 2011) (Cooke, J.) (same). As Defendants tell it, carriers will do business with anyone at any time and do not work exclusively with any one third-party logistics company. (Doc. 93 at 5.) Blue-Grace agrees that "there are thousands of carriers in the United States that can do business with any [third-party logistics company] they prefer," but argues that this is what makes carrier relationships "into a significant business advantage." (Doc. 108 at 15.) Blue-Grace contends that it "leverages its relationships with carriers to match carriers with its shipping customers whose

shipping requirements and preferences are aligned with the carrier's routes, prices, and preferences to create an advantageous business dealing for all parties involved." (Doc. 108 at 17.) This response does not support the argument that relationships with carriers are a thing of value that gives Blue-Grace a leg up in obtaining business. It simply further supports Defendants' contention that third-party logistics companies "are the customer or client of [the carriers]—not the other way around." *Concrete Surface Innovations*, 2010 WL 1930971, at *6.

But even if carrier relationships are the same as customer relationships, Blue-Grace fails to meet the other statutory requirements for protection of those relationships. The statute recognizes an interest in "*substantial* relationships with *specific* prospective or existing customers, patients, or clients." § 542.335(1)(b)(3) (emphasis added). "The purpose of [this] statutory provision is to prevent an employee from taking advantage of a customer relationship which was developed during the term of the employee's employment." *See Bradley v. Health Coal., Inc.*, 687 So. 2d 329, 334–35 (Fla. 3d DCA 1997) (discussing the precursor to § 542.335). This requires an "exclusive or other kind of relationship that could be construed as 'substantial.' " *Anich Indus., Inc.*, 751 So. 2d at 771. And it requires Blue-Grace to plead and prove "the identity of the specific customers." *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022); *see also Passalacqua*,

844 So. 2d at 117–18 (finding no legitimate interest where "not one such customer was named in the complaint, the motion[,] or any exhibits filed").

Blue-Grace does not point to any specific carriers in its motion, let alone explain how its relationships with them are substantial. Though at least one of the individual Defendants named specific carriers he worked with in his deposition, he specifically stated that at least two of the carriers he mentioned are no longer in business since he worked with them. (Doc. 89-4 at 9.) Blue-Grace does not point to those carriers in its motion or response. It also does not explain which ones are still in business or with which it had a substantial relationship. It is Blue-Grace's duty to point to evidence in the record showing specific carriers with which it had a relationship. *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (disavowing a court's obligation to hunt for evidence in the record) (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

Blue-Grace's most specific contention of a "substantial relationship" is deposition testimony of some of the individual Defendants explaining that they "built relationships with [carriers] and maintained those relationships to book loads with them" and that such "relationships are leveraged into negotiations." (Doc. 108 at 15–16.) But, even if Blue-Grace pointed to specific carriers, this falls far short of proving an exclusive or otherwise substantial relationship to counter Defendants' claim that "carriers are agnostic to where you work" and "are eager to work with any" third-party logistics company. (Doc. 100 at 10

17

(quoting Doc. 94-14 at 15)); *Anich Ind., Inc.*, 751 So. 2d at 771. Simply put, Blue-Grace points to no evidence in the record showing that the relationships that some of the individual Defendants had with carriers could lead to Defendants having an unfair advantage over Blue-Grace. Defendants are therefore entitled to summary judgment on the breach of contract claims.

### 2. Claims Against Traffic Tech

Blue-Grace brings three claims for injunctive relief and damages against Traffic Tech alleging that Traffic Tech tortiously interfered with its contractual relationships with the individual Defendants and aided and abetted their breaches of the employment agreements. (Doc. 31 at 28–33.) The parties dispute whether Florida or Illinois law applies to these claims.

"A federal court sitting in diversity will apply the conflict-of-law rules of the forum state." *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Florida applies the "most significant relationships test" for torts, which requires looking at "the place where the injury occurred," "the place where the conduct causing the injury occurred," "the place of business of the parties," and "the place where the relationship, if any, between the parties is centered." *Id.* Additionally, " 'the place where the conduct occurred' assumes particular importance" in torts involving unfair competition. *Id.* at 1241 n.1. Because the parties agree that the individual Defendants worked at

Blue-Grace's Chicago office and began working at Traffic Tech's Chicago office, (Doc. 90 ¶ 12–17), these factors—particularly "the place where the conduct causing the injury occurred"—favor application of Illinois law.

Under Illinois law, Blue-Grace's claims against Traffic Tech fail. First, "Illinois law does not recognize a claim for aiding and abetting a breach of contract." *Antares Iron & Copper, Inc. v. Price*, No. 1-10-1287, 2011 WL 10068628 (Ill. App. Ct. June 30, 2011); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 413 n.6 (7th Cir. 2000) ("Class counsel cites, and we have discovered, no Illinois case recognizing a cause of action for aiding and abetting a breach of contract."). These claims thus fail as a matter of law.

Second, to prove tortious interference with a contract under Illinois law, a plaintiff must prove: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E. 2d 672, 676 (Ill. 1989). Here, Blue-Grace clearly fails to prove its claim under Illinois law because, as explained above, it fails to satisfy the first element of a valid and enforceable contract.

Finally, Blue-Grace asserts it is entitled to injunctive relief to prevent Traffic Tech, as a non-party to the employment contracts, from violating them. It cites a single Middle

District of Florida case interpreting Florida law for this proposition. (Doc. 89 at 22 (citing *N. Am. Prod. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1229 (M.D. Fla. 2002).) To the extent that such a right to injunction could exist, Blue-Grace is not entitled to it because Blue-Grace has not met its burden of showing the contracts are enforceable. Thus, Traffic Tech is entitled to summary judgment on all three counts against it.

### B. Fahey and Traffic Tech's Counterclaims

Fahey and Traffic Tech bring three counterclaims against Blue-Grace. (Doc. 1-3.) First, they seek a declaratory judgment that the restrictive covenants in Fahey's employment agreement with Blue-Grace is unenforceable. (*Id.* ¶ 39.) Second, they claim that Blue-Grace tortiously interfered with Fahey's employment agreement with Traffic Tech by attempting to enforce their unenforceable restrictive covenants against Fahey, "[s]preading falsehoods" about Fahey, and "[u]sing bad faith." (*Id.* ¶ 44.) Finally, they claim that Blue-Grace violated Florida's Deceptive and Unfair Trade Practices Act by requiring Fahey to sign an unenforceable contract and attempting to enforce an illegal restraint of trade. (*Id.* ¶ 51–52.)

### 1. Declaratory Judgment

Fahey and Traffic Tech's first claim seeks a "declaration that the non-compete provision is void, unlawful, and unenforceable under Florida law and that they are entitled

to reasonable attorneys' fees and costs incurred by challenging the enforceability of the non-compete provision." (Doc. 1-3 ¶ 38.)

"[D]istrict courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." *Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").[1] Where declaratory judgment claims are redundant with an earlier claim, courts frequently decline to entertain them. *See RLI Ins. Co. v. Coastline Title of Pinellas, LLC*, 591 F. Supp. 3d 1182, 1190 (M.D. Fla. 2022) (Mizelle, J.) (collecting cases); *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216–17 (S.D. Fla. 2011) (Marra, J.) (analyzing the necessity of a declaratory judgment counterclaim that overlapped with a claim in the operative complaint).

Here, this legal issue is already resolved by granting summary judgment for Defendants on Blue-Grace's breach of contract claims. Therefore, the Court exercises its discretion to dismiss the declaratory judgment claim. *See RLI Ins. Co.*, 591 F. Supp. 3d at

---

[1] Fahey and Traffic Tech fail to specify whether the declaratory judgment claim is brought under the federal or Florida Declaratory Judgment Act, (Doc. 1-3 at 17–22), but courts have similarly broad discretion under the state statute. *See Travelers Ins. Co. v. Emery*, 579 So. 2d 798, 800 (Fla. 1st DCA 1991) ("The granting of [declaratory] relief remains discretionary with the court, and the court's ruling is accorded great deference.").

1190 (declining to exercise jurisdiction over redundant declaratory judgment claims and dismissing them at summary judgment). To the extent that the declaratory judgment claim requests a determination as to Fahey and Traffic Tech's entitlement to attorney's fees, they may bring a motion for attorney's fees under to the Local Rules for such a determination. *See* Local Rule 7.01.

### 2.   Fahey and Traffic Tech's Other Claims

Fahey and Traffic Tech assert a tortious interference claim based on Blue-Grace "spreading falsehoods" and "asserting rights under and attempting to enforce a void, illegal, and unenforceable provision" in Fahey's employment agreement, and a FDUTPA claim which relates to Blue-Grace forcing Fahey to sign an illegal agreement and initiating this lawsuit. Blue-Grace asserts that these actions are protected by litigation privilege.

Under the Florida litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria, McCalla, Raymer, Barret & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007) (applying the litigation privilege to "all causes of action, whether for common-law torts or statutory violations"). Absolute immunity extends to acts taken during and "necessarily preliminary" to the litigation, such as actions required to be taken as conditions precedent to suit. *See Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, 1326 (Fla. 4th DCA 1983); *AGM Inv'rs, LLC v. Bus. L. Group, P.A.*, 219 So. 3d 920,

22

924 (Fla. 2d DCA 2017). "In the context of a tortious interference with a business relationship claim, the act of filing the complaint is subject to absolute immunity under the litigation privilege." *Pace v. Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n*, 224 So. 3d 342, 345 (Fla. 5th D.C.A. 2017).

Here, to the extent that Fahey and Traffic Tech's tortious interference and FDUTPA claims are based on the filing of lawsuits, Florida's litigation privilege bars them. *Id.* But to the extent that the claims are based on Blue-Grace's other acts, such as threatening Fahey that he would be "buried under the courthouse" if he tried to leave, the privilege does not provide absolute immunity. *See id.* (finding that the privilege protected some acts of tortious interference alleged in the complaint, but not those taken outside the context of litigation); *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No. 8:19-cv-1895, 2020 WL 2128498, at *7 (M.D. Fla. May 5, 2020) (Honeywell, J.) (refusing to dismiss claims on basis of litigation privilege where "it [was] not apparent that Defendant's claims [were] based exclusively on the lawsuits"). Therefore, to the extent that Traffic Tech and Fahey's claims depend on statements made or actions taken before suit, the absolute privilege does not mandate summary judgment for Blue-Grace.

Blue-Grace's other arguments in favor of summary judgment fair no better. First, on the tortious interference claim, Blue-Grace asserts that Fahey and Traffic Tech cannot prove interference or damages because Fahey remains employed at Traffic Tech and

"[t]here is no record evidence of any facts or specific lost 'business opportunities' " showing they were damaged. But Fahey and Traffic Tech point to evidence that Blue-Grace's CEO's threats required Traffic Tech to increase Fahey's employment offer by $50,000 to keep him from getting cold feet. Fahey and Traffic Tech meet their burden of pointing to at least a dispute of material fact as to interference and damages.

Second, Blue-Grace asserts that its acts of interference are further protected under Florida's financial privilege. The financial privilege applies to "actions taken to safeguard or protect one's financial interest, so long as improper means are not employed." *See Johnson Enter. Of Jacksonville v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998). Blue-Grace fails to point to the absence of a dispute of material fact as to whether improper means were employed when Blue-Grace interfered in Fahey and Traffic Tech's relationship by threatening to sue him, so summary judgment cannot be granted on this ground.

Finally, Blue-Grace's other arguments in favor of summary judgment on the FDUTPA claim also fail. The claim reincorporates only the factual allegations at the beginning of the complaint, not every count, so it is not a shotgun pleading. (Doc. 1-3 ¶ 48.) And Fahey and Traffic Tech point to the same actual damages here: that Traffic Tech

had to pay Fahey an additional $50,000 to make the move.[2] Therefore, Blue-Grace's motion for summary judgment on these claims is denied.

As a result, little remains to be decided at trial. Because the litigation privilege bars any relief for actions taken in the context of filing a lawsuit, the only claims remaining for trial are tortious interference based on threats to sue and FDUTPA based on requiring Fahey to sign an unenforceable agreement.

### C. Defendants' Motion for Sanctions

Defendants also move for sanctions, arguing that Blue-Grace should be barred from presenting evidence of damages because it failed to provide evidentiary support for its calculation of damages. (Doc. 91.) Because Defendants succeed on Blue-Grace's claims based on the unenforceability of the contracts, I have no need to discuss damages. Therefore, Defendants' motion for sanctions requesting that Blue-Grace be prohibited from presenting evidence of damages is denied as moot.

## IV.   CONCLUSION

Blue-Grace fails to point to more than generic statements of confidential information and substantial relationships and fails to identify evidence showing that it has a legitimate business interest justifying the restrictive covenants in the individual

---

[2] Blue-Grace's contention that Fahey and Traffic Tech did not respond to their motion on the FDUTPA count is incorrect. (Doc. 113 at 8 n.7.) Defendants responded to Blue-Grace's arguments on the tortious interference and FDUTPA claims together. (Doc. 100 at 28–30.)

Defendants' contracts. Therefore, Defendants are entitled to summary judgment on Blue-Grace's claims. But genuine disputes of material fact preclude summary judgment on Fahey and Traffic Tech's tortious interference and FDUTPA claims to the extent that they depend on statements made or actions taken before suit. The counterclaimants' Declaratory Judgment claim is dismissed. Accordingly, the following is **ORDERED**:

1. Count I of Fahey and Traffic Tech's Counterclaims (Doc. 1-3) is **DISMISSED**.

2. Blue-Grace's Motion for Summary Judgment (Doc. 89) is **DENIED**.

3. Defendants' Motion for Summary Judgment (Doc. 93) is **GRANTED**.

4. Defendant's Motion for Sanctions (Doc. 91) is **DENIED as moot**.

5. The Clerk is directed to terminate Defendants Colle, Fox, and Wilkiel from this case.

**ORDERED** in Tampa, Florida, on January 26, 2022.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge